ACCEPTED
02-16-00128-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
4/20/2016 11:31:42 AM
DEBRA SPISAK
CLERK

No. _____

_____

**IN THE
SECOND DISTRICT COURT OF APPEALS OF TEXAS
AT FORT WORTH**

_____

*In re MIDWESTERN CATTLE MARKETING, LLC,*

**RELATOR,**

_____

**FROM THE
271ST JUDICIAL DISTRICT COURT
OF JACK COUNTY, TEXAS
THE HONORABLE JOHN FOSTEL PRESIDING**

_____

**RECORD IN SUPPORT OF
PETITION FOR WRIT OF MANDAMUS**

_____

Christopher B. Trowbridge
Texas Bar No. 24008182
Beverly A. Whitley
Texas Bar No. 21374500
R. Heath Cheek
Texas Bar No. 24053141
Gregory D. Kelminson
Texas Bar No. 24070045

**BELL NUNNALLY & MARTIN LLP**
3232 McKinney Avenue, Suite 1400
Dallas, Texas  75204-2429
Telephone:  (214) 740-1400
Telecopy:  (214) 740-1499

**ATTORNEYS FOR RELATOR
MIDWESTERN CATTLE
MARKETING, LLC**

# INDEX TO RECORD

**PAGE**

A.  Affidavit of Christopher B. Trowbridge (signed April 18, 2016)...................1

   Exhibit 1:  Plaintiff's Original Petition (filed July 6, 2015).........................2

   Exhibit 2:  Petition in Intervention (filed November 24, 2015) .................15

   Exhibit 3:  Plaintiff's Motion to Strike Petition in Intervention, and Alternative Motion to Sever (filed December 18, 2015)..........27

   Exhibit 4:  Tony Lyon's Statement in Opposition of Plaintiff's Motion to Strike Petition in Intervention, and Alternative Motion to Sever (filed February 4, 2016) ................................33

   Exhibit 5:  Owen Lyon's and Monna Lyons' Statement in Opposition to Plaintiffs' Motion to Strike Petition in Intervention, and Alternative Motion to Sever (filed February 4, 2016) ....................................................36

   Exhibit 6:  First Amended Petition in Intervention (filed February 26, 2016) ........................................................................40

   Exhibit 7:  Intervenor's Response to Motion to Strike Petition in Intervention, and Alternative Motion to Sever (filed February 26, 2016)................................................................57

   Exhibit 8:  Order Denying Plaintiff's Motion to Strike Petition in Intervention, and Alternative Motion to Sever (signed March 21, 2016)................................................................80

   Exhibit 9:  Transcript of Hearing (held March 4, 2016)............................81

             Exhibits ........................................................................93

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the persons listed below in the manner and on the date indicated.

**VIA E-MAIL**

Steven C. Bankhead, Esq.
8111 Preston Road, Suite 500
Dallas, Texas 75225-6377

Attorney for Tony E. Lyon
d/b/a Lyon Farms

**VIA E-MAIL**

Derrick S. Boyd, Esq.
Michael A. Simpson, Esq.
Kristy P. Campbell, Esq.
Simpson, Boyd, Powers
& Williamson
P.O. Box 957
105 N. State Street, Suite B
Decatur, Texas 76234

Attorneys for Northwest
Cattle Feeders, L.L.C.
and Riley Livestock, Inc.

**VIA E-MAIL**

James S. Robertson, Esq.
Eric S. Weber, Esq.
Glast, Phillips & Murray, P.C.
14801 Quorum Drive, Suite 500
Dallas, Texas 75254

Attorneys for Monna and Owen Lyon

**VIA CM,RRR**
**#9414 7266 9904 2058 5801 64**

Judge John Fostel
271st Judicial District
100 N. Main, Suite 308
Jacksboro, Texas 76458

Respondent

DATED this the 20th day of April, 2016.

/s/ *Beverly A. Whitley*
Beverly A. Whitley

09964.00002/2610385_1.DOC

# AFFIDAVIT OF CHRISTOPHER B. TROWBRIDGE

STATE OF TEXAS §
§
COUNTY OF DALLAS §

**BEFORE ME,** the undersigned notary public, on this day appeared **CHRISTOPHER B. TROWBRIDGE**, who, after being duly sworn by me, deposed and said:

1.      "My name is Christopher B. Trowbridge. I have personal knowledge of the facts set forth in this Affidavit. I am duly authorized to make this Affidavit and am competent to testify to the matters contained in this Affidavit. I swear that every statement made in this Affidavit is made on my personal knowledge and is true and correct.

2.      "I am an attorney licensed to practice law in the State of Texas. I am counsel of record for the plaintiff, Midwestern Cattle Marketing, Inc. in the case styled *Midwestern Cattle Marketing, LLC v. Tony E. Lyon d/b/a Lyon Farms, Individually, et al.,* Cause No. 15-07-061, in the 271st District Court, Jack County, Texas.

3.      "Attached hereto as Exhibits 1 through 8 are true and correct copies of pleadings and orders in Cause No. 15-07-061.

4.      "Attached hereto as Exhibit 9 is a true and correct copy of the transcript of a hearing held March 4, 2016, and Exhibits A through D introduced in evidence during that hearing."

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Christopher B. Trowbridge

**SUBSCRIBED AND SWORN TO BEFORE ME** on this the 18th day of April, 2016.

Andrea Cheree Sellers
Notary Public, State of Texas
Commission # 1546713
Expires: 04/08/2017

_____
NOTARY PUBLIC in and for
the State of TEXAS

09964.00002/2610428_1.DOC

**AFFIDAVIT OF CHRISTOPHER B. TROWBRIDGE**                          **PAGE 1**

R001



CAUSE NO. 15-07-061

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC, | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | |
| TONY E. LYON d/b/a LYON FARMS, individually, OWEN LYON, individually and MONNA LYON, individually, | § § § § | 271st JUDICIAL DISTRICT |
| Defendants. | § § § | JACK COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Midwestern Cattle Marketing, LLC ("MWC") complains of Defendants Tony E. Lyon d/b/a Lyon Farms ("Tony Lyon"), individually, Owen Lyon ("Owen Lyon"), individually, and Monna Lyon, individually ("Monna Lyon") (together "Defendants") and respectfully shows the Court the following:

### I.
### DISCOVERY CONTROL PLAN & MONETARY RELIEF

1.    Discovery is intended to be conducted under Level 2, pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.  MWC reserves the right to request reassignment to a different discovery control plan level.

2.    MWC seeks monetary relief greater than $1,000,000.00.



FILED
_____ A.M. 1:20 P.M.

JUL 6 2015

TRACIE PIPPIN DIST. CLERK
JACK COUNTY, TEXAS
BY_____ DEPUTY

PLAINTIFF'S ORIGINAL PETITION                                                                    PAGE 1

R002

## II.
## PARTIES

3.      Plaintiff MWC is a Nebraska limited liability company authorized to conduct business in Texas.

4.      Defendant Tony E. Lyon d/b/a Lyon Farm is an individual who resides in Perrin, Texas and may be served with process at his residence at 3100 Back Cemetery Road, Perrin, TX 76486 or wherever he may be found.

5.      Defendant Owen Lyon is an individual who resides Perrin, Texas and may be served with process at his residence and/or business at 1890 Hardy Road, Perrin, TX 76486, or wherever he may be found.

6.      Defendant Monna Lyon is an individual who resides in Perrin, Texas and may be served with process at her residence and/or business at 1890 Hardy Road, Perrin, TX 76486, or wherever she may be found.

## III.
## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this controversy because the damages are within the Court's jurisdictional limits.

8.      Pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code, venue is proper in Jack County, Texas because it is the county of Defendants' residences and/or businesses at the time the cause of action accrued. Venue is also proper because a substantial part of the events or omissions giving rise to the causes of action asserted herein occurred in Jack County, Texas. Further, venue is proper in Jack County, Texas pursuant to Section 15.005 of the Texas Civil Practice and Remedies Code.

R003

## IV.
## FACTS

9. MWC was founded in 2008 by a team of cattlemen with nearly 100 years of combined experience in the cattle business. MWC is built on a foundation of solid relationships — some reaching back 25 years or more — that continue to be maintained with a high level of service and integrity. MWC offers personal service to every customer and provides superior quality that contributes to their bottom line.

10. In essence, MWC acts as cattle brokers or "order buyers." It makes cattle purchases simple, straightforward, and profitable for producers and buyers alike. As part of its business, MWC matches cattle producers with cattle buyers. Once matched, MWC pays for the cattle when the company picks up the cattle from the producer. MWC is then paid when the cattle are delivered to the seller. Accordingly, MWC makes its profit from the spread of the buy and sell.

11. In July 2011, MWC and its owner Jason O'Connell met Tony Lyon in a sale barn in Graham, Texas. Shortly after this July 2011 meeting, MWC, impressed by the representations and mannerisms of Tony Lyon, decided to enter into a business arrangement with one another. As part of the agreement, Tony Lyon, through the assistance of Owen and Monna Lyon, would buy cattle for MWC from the producer and charge the purchase price to the company. MWC would then provide for the delivery of the cattle to the buyer. Through these years and transactions, Tony Lyon built trust and befriended Jason O'Connell.

12. Unfortunately, Tony Lyon was not worthy of such trust. Unbeknownst to MWC, prior to ever meeting Jason O'Connell, Tony Lyon had been sentenced to 37 months in prison and ordered to pay more than $6 million for perpetrating a fraudulent cattle-buying scheme. After his release from prison Tony Lyon again found himself in trouble. The U.S. Department of

R004

Agriculture fined Tony Lyon $153,000 for, among other things: (1) failing to pay when due the full purchase price of livestock purchased in commerce; (2) failing to have and maintain sufficient funds on deposit and available in the account upon which checks for livestock purchase are drawn to pay them when presented.

13. However, without knowledge of Mr. Lyon's background, MWC continued to do business with and trust Tony Lyon. Indeed, around the beginning of 2014, to make their business dealing more efficient, MWC provided a MWC checkbook and signature stamp to Tony Lyon so he could sign checks on MWC's behalf.

14. This act of trust was apparently too much for Mr. Lyon, he was unable to restrain himself, and the defrauding of MWC began. Tony Lyon informed MWC that he met a "big money" buyer named John George, owner of George Cattle Company in Fort Worth, who wanted to get into cattle through a "feeding club". A feeding club is where investors pool money in the cattle market to buy, hold, and flip cattle for profit.

15. MWC, relying on Tony Lyon's representations to be true, set up repeated transactions with George Cattle Company as the buyer. Under the agreement: (a) Tony Lyon would write a check from MWC to either Owen Lyon or Lyon Farms, the d/b/a of Owen and Tony Lyon; (b) Tony Lyon would then send MWC a hand-written invoice by fax that detailed the number of cattle, the weight, etc., and the total amount due for the cattle; (c) Tony Lyon would then request that MWC invoice George Cattle Company; (d) MWC would fax the invoice to Tony Lyon; (e) Tony Lyon would tell MWC that the cattle should then be sent to George Cattle Company; (f) Tony would present the MWC invoice to George Cattle Company for payment; (g) George Cattle Company would then pay Lyon Farms and Lyon Farms would then pay MWC.

R005

16.    Despite the representations made by Defendants and unbeknownst to MWC, there was never John George or George Cattle Company. Instead, Tony Lyon was deviously created John George and George Cattle Company as a front for a fraudulent scheme to steal Plaintiff's cattle and money.

17.    In late June 2015, Tony Lyon's deplorable scheme was ultimately discovered when MWC's bank PointsWest Bank — contacted MWC to inform it of a suspicious transaction involving Tony Lyon and George Cattle Company. MWC deposit a check written on June 26, 2015, for the amount of $5,020,230.11 from Lyon Farms. The check was signed by Defendant Monna Lyon and was written from the account of "Owen or Monna D Lyon Cattle Account."

18.    PointsWest Bank called Lyon Farms' bank — Legend Bank — to verify if the check would clear Lyon Farms' account. Legend Bank informed PointsWest Bank that the check would not clear. The check was ultimately returned for insufficient funds on July 1, 2015. However, while the banks were determining whether the check would clear, Tony Lyon wrote the following checks from the MWC account without authorization:

- Check 1000892 $31,842.71 to K.L.

- Check 1000894 $1,772,959.76 to Defendant Owen Lyon

- Check 1000895 $1,644,308.00 to Defendant Owen Lyon

- Check 1001336 $344,400.00 to L.H.

All of these checks were paid by the bank.

19.    Once MWC was informed by PointsWest Bank that the check would not clear, MWC contacted Tony Lyon. Preying upon MWC's trust yet again, Tony Lyon said he would get the money from George Cattle Company. Tony Lyon then called back MWC and lied to MWC that he received the funds and would wire it in the morning.

**PLAINTIFF'S ORIGINAL PETITION**                                       **PAGE 5**

R006

20. Despite this assurance, Tony Lyon did not wire the money as promised. Because the $5,020,230.11 wire never came through even though MWC fully performed, MWC unsuccessfully attempted to stop payment on its outstanding checks. As a result, MWC went from having over one million dollars in its bank account to being overdrawn by $1,644,440.36.

21. When MWC confronted Tony Lyon about why the check bounced, Tony Lyon admitted that indeed there was no money, no cattle and George Cattle Company never existed.

22. On information and belief, Owen Lyon and Monna Lyon acted as agents of Tony Lyon in the conduct described above.

23. Further, on information and belief, the money that was deposited in Defendants' accounts is in the process of being removed from the accounts and hidden by Defendants, thus, necessitating extraordinary relief.

24. All conditions precedent to Plaintiff's recovery have been fully performed, or have occurred or been waived.

**V.**
**CAUSES OF ACTION**

**COUNT ONE: COMMON LAW FRAUD**

25. MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

26. Defendants made multiple false representations to MWC regarding the $5,020,230.11 transaction with George Cattle Company. These representations included that (1) George Cattle Company existed and bought cattle, (2) Defendants had the money to pay MWC the amount owed, and (3) Defendants talked to George Cattle Company and would wire the $5,020,230.11. Those representations were material. Defendants knew the representations were false when they were made. Defendants made the representations with the intent that MWC rely

R007

and act on them. MWC justifiably relied on the representations in providing for the delivery of cattle and for writing other checks on the account with the belief the check for $5,020,230.11 would clear, and, as a result, suffered injury for which it seeks judgment.

## COUNT TWO:  CIVIL THEFT

27.    MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

28.    Defendants violated the Texas Civil Theft Liability Act and Sections 31.03 and 31.06 of the Texas Penal Code.  The actions of Defendants constitute civil theft because Defendants, knowingly and without effective consent, appropriated cattle or, alternatively, money belonging to MWC, for the purpose of using that property for their own benefit.

29.    Defendants obtained property by issuing a check when they did not have sufficient funds for the payment in full of the check.  On June 26, 2015, Defendants received notice that their account had insufficient funds, and the Defendants have failed to pay the holder in full within 10 days after receiving notice of that refusal.  MWC has been injured as a proximate result of Defendants' actions in an amount to be more fully demonstrated at trial.  In addition, because the harm caused by Defendants results from fraud, malice, and/or gross negligence, MWC is entitled to recovery of exemplary damages.  In addition, MWC is entitled to recover court costs and reasonable and necessary attorneys' fees.  See TEX. CIV. PRAC. & REM. CODE § 134.005(b).

R008

## COUNT THREE: NEGLIGENT MISREPRESENTATION

30.     MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

31.     Defendants made multiple false representations to MWC regarding the $5,020,230.11 transaction with George Cattle Company. These representations included that: (1) George Cattle Company existed and bought cattle; (2) they had the money to pay MWC the amount owed; and (3) Defendants talked to George Cattle Company and would wire the $5,020,230.11. Those representations were made in the course of Defendants' business or in a transaction in which he had a pecuniary interest. Defendants did not exercise reasonable care or competence in communicating those representations. MWC justifiably relied on the representations in providing for the delivery of cattle and for writing other checks on the account with the belief the check for $5,020,230.11 would clear, and, as a result, suffered injury for which it seeks judgment.

## COUNT FOUR: FRAUDULENT INDUCEMENT

32.     MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

33.     Defendants made multiple false representations to MWC regarding the $5,020,230.11 transaction with George Cattle Company. These representations included that: (1) George Cattle Company existed and bought cattle; (2) they had the money to pay MWC the amount owed; and (3) they talked to George Cattle Company and would wire the $5,020,230.11. Those representations were material. Defendants knew the representations were false when they were made. Defendants made the representations with the intent that MWC rely and act on them. MWC justifiably relied on the representations in entering into the agreement to provide

R009

delivery of cattle, and, as a result, suffered injury for which it seeks judgment.

## COUNT FIVE: CONVERSION

34. MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

35. As detailed above, Defendants wrongfully possessed MWC's property. MWC entrusted Defendants to faithfully provide for the delivery of cattle and remit payment.

36. MWC has incurred substantial damages as a direct and proximate result of Defendants' wrongful conduct and dominion of MWC's property.

## COUNT SIX: MONEY HAD AND RECEIVED

37. MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

38. Defendants hold money that, in equity and good conscience, belongs to MWC. MWC are entitled to recover this money from Defendants, in an amount to be more fully demonstrated at trial.

## COUNT SEVEN: BREACH OF CONTRACT

39. MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

40. MWC and Defendants are parties to an Agreement. Pursuant to the Agreement, Defendants assisted MWC in the purchase and selling of cattle. Defendants were to provide the appropriate money to MWC for the selling price of the cattle. Defendants breached this Agreement by failing to provide MWC with the money owed.

R010

41.     MWC has been injured as a proximate result of Defendants' actions in an amount to be more fully demonstrated at trial. In addition, Plaintiffs are entitled to recovery of attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE § 38.001 (Vernon 2008).

## COUNT EIGHT—QUANTUM MERUIT

42.     MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

43.     In the alternative and without waiving the foregoing, MWC, acting in the ordinary course of business, furnished Defendants with cattle, as detailed above. Defendants received and accepted the cattle and the corresponding money, unjustly enriching Defendants at the expense of MWC. Defendants knew, or should have known, that the cattle were provided in anticipation of compensation, and were not furnished gratuitously. After all offsets, payments and credits, the reasonable unpaid value of the cattle is at least $5,020,230.11. Despite demand, Defendants wrongfully refused to pay the reasonable value of the cattle for which sum MWC sues.

44.     MWC has been damaged in an amount in excess of the jurisdictional limits of the Court and is entitled to recover.

## COUNT NINE:  CONSPIRACY

45.     MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

46.     Defendants acted pursuant to a common scheme designed to unlawfully possess MWC's cattle and/or to steal MWC's money.

47.     Defendants committed overt acts in perpetuation of this common scheme by, among other things, making false representations to MWC and writing a bad check to MWC.

48.     Defendants are jointly and severally liable for the tortious conduct alleged in Counts 1 through 5, *infra*.

R011

49.    MWC has been injured as a proximate result of the conspiracy between Defendants in an amount to be more fully demonstrated at trial. In addition, because the harm caused by Defendants results from fraud, malice, and/or gross negligence, MWC is entitled to recovery of exemplary damages.

## COUNT TEN:  AIDING AND ABETTING

50.    MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

51.    Tony Lyon owed a fiduciary duty to MWC. Defendants Monna and Owen Lyon acted with knowledge that Tony Lyon's conduct alleged *infra,* was a breach of his fiduciary duty duty, and Defendants Monna and Owen Lyon provided substantial assistance and encouragement to Tony Lyon in carrying out these tortious acts. Defendants Monna and Owen Lyon B17 is therefore liable for aiding and abetting the tortious acts alleged in Counts 1 through 5, *infra.*

52.    MWC has been injured as a proximate result of Defendants Monna and Owen Lyon actions in an amount to be more fully demonstrated at trial. In addition, because the harm caused by Defendants Monna and Owen Lyon result from fraud, malice, and/or gross negligence, MWC is entitled to recovery of exemplary damages.

## COUNT ELEVEN:  ATTORNEY'S FEES

53.    Each of the foregoing paragraphs are incorporated and reasserted herein by reference.

54.    MWC previously presented Defendants with a written demand for its claims. Despite that demand, Defendants failed and refused to pay the balance due. As a result, MWC was required to retain the law firm of Bell, Nunnally & Martin LLP to enforce MWC's rights and has agreed to pay the firm a reasonable fee for its services. MWC has incurred, and will

R012

continue to incur, reasonable attorney's fees, which it seeks to recover as damages from Defendants pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code and Texas law.

## VI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** MWC requests that Defendants be cited to appear and answer this Petition and that upon final hearing that MWC have judgment against Defendants, jointly and severally, as follows:

a.    all actual damages;

b.    all special damages as permitted by law;

c.    exemplary damages as permitted by law;

d.    disgorgement of all profits obtained by Defendants as permitted by law;

e.    pre-judgment interest at the highest rate permitted by Texas law;

f.    post-judgment interest at the highest rate permitted by Texas law;

g.    reasonable and necessary attorneys' fees for pre-trial, trial, any and all appeals, and petitions for review;

h.    all costs of suit; and

i.    all other relief to which MWC may be entitled in law or equity.

R013

Respectfully submitted,

**BELL, NUNNALLY & MARTIN LLP**

By: _Christopher Trowbridge_

Christopher B. Trowbridge
ctrowbridge@bellnunnally.com
Texas Bar No. 24008182
R. Heath Cheek
Texas Bar No. 24053141
hcheek@bellnunnally.com
Gregory D. Kelminson
State Bar No. 24070045
gkelminson@bellnunnally.com

3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204-2429
Telephone: (214) 740-1400
Telecopy: (214) 740-1499

**ATTORNEYS FOR PLAINTIFF**
**MIDWESTERN CATTLE MARKETING, LLC.**

2220269_1.doc

**PLAINTIFF'S ORIGINAL PETITION**                                      **PAGE 13**

R014

CAUSE NO. 15-07-061

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC | § § § | IN THE DISTRICT COURT |
| Plaintiff | § § § | |
| vs. | § § § | JACK COUNTY, TEXAS |
| TONY E. LYON d/b/a LYON FARMS, Individually, OWEN LYON, individually and MONNA LYON, individually | § § § § | |
| Defendant | § § | |
| and | § § | |
| NORTHWEST CATTLE FEEDERS, L.L.C. and RILEY LIVESTOCK, INC. | § § § | |
| Intervenors | § § | 271ST JUDICIAL DISTRICT |

## PETITION IN INTERVENTION

TO THE HONORABLE JUDGE OF THE COURT:

Northwest Cattle Feeders, LLC and Riley Livestock, Inc. (hereinafter collectively "Intervenors") file this Petition in Intervention, and in support of same would respectfully show as follows:

**1.0     Discovery Level**

1.1     Pursuant to TRCP 190.1, Intervenors respectfully requests that discovery in this case be conducted under Level 3 by further order of this Court, as set forth in TRCP 190.4.

**2.0     Grounds for Intervention**

2.1     This litigation arises out of a scheme perpetuated by Tony E. Lyon to defraud purchases of cattle. Intervenors were purchasers victimized by this fraudulent scheme. Lyon committed this scheme while acting as an agent for Midwestern Cattle Marketing, LLC

ORIGINAL PETITION IN INTERVENTION – PAGE 1

R015

(hereinafter Midwestern Cattle). Owen Lyon and Monna Lyon were also participants in the scheme involving the alleged purchase and sell of cattle.

2.2 On or about July 6, 2015, Midwestern Cattle filed this suit against Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon (hereafter collectively known as "Lyon Defendants") seeking damages arising from Lyon's conduct as Midwestern Cattle's agent.

2.3 As set forth below, Intervenors are entitled to recover legal and equitable relief against Midwestern Cattle and Lyon Defendants. As such, Intervenors have a justiciable interest in this suit, and are proper parties to the present suit. Intervention will not unnecessarily or unreasonably complicate the case by an excessive multiplication of issues, and is essential to protect Intervenors' interest.

## 3.0 Venue

3.1 Venue is proper in Jack County for the claims asserted by Northwest Cattle Feeders pursuant to Texas Civil Practice & Remedies Code §15.002(a)(2) because one or more parties are residents of Jack County, Texas. Additionally, venue is proper under Texas Civil Practice & Remedies Code §15.002(a)(1) because a substantial part of the acts and omissions giving rise to Intervenors' claims occurred in Jack County, Texas. Venue is also proper in Jack County, Texas under Texas Civil Practice & Remedies Code §15.062.

3.2 Venue is proper in Wise County for the claims asserted by Riley Livestock, Inc. pursuant to Texas Civil Practice & Remedies Code §15.002(a)(2) because Lyon Defendants are residents of Jack County, Texas. Additionally, venue is proper under Texas Civil Practice & Remedies Code §15.002(a)(1) because a substantial part of the acts and omissions giving rise to Intervenors' claims occurred in Jack County, Texas. Venue is also proper in Jack County, Texas under Texas Civil Practice & Remedies Code §15.062.

R016

## 3.0 Factual Background

4.1 Midwestern Cattle admits that it acts as cattle brokers. Midwestern Cattle buys cattle from a seller and then sells the cattle to a buyer.

4.2 Intervenors entered into an agreement with Midwestern Cattle through its agent Tony E. Lyon d/b/a Lyon Farms to purchase 554 head of cattle. Before entering into this agreement, Jeff Cox (on behalf of Intervenors) met with Tony Lyon in Jack County to discuss the purchase. Lyon showed Cox the cattle he was purchasing. At all times relevant herein in his dealings with Cox (on behalf of Intervenors), Lyon was acting as an agent and representative of Midwestern Cattle.

4.3 Midwestern Cattle admits that Tony Lyon was its agent. Midwestern Cattle provided Tony Lyon a Midwestern Cattle checkbook and signature stamp enabling him to conduct the business of Midwestern Cattle. At no time did Midwestern Cattle investigate Lyon's background to determine whether he was fit for such authority to act on behalf of Midwestern Cattle.

4.4 After Intervenors agreed to purchase the cattle in question, Midwestern Cattle sent an invoice to Intervenors dated March 31, 2015. The recipient of the invoice was Northwest Cattle Feeders, LLC. The amount of the invoice was $798,351.19. The invoice was specifically for 554 head of cattle with the description "Steers sold from Perrin, TX." This invoice relates to the specific cattle Cox discussed with Lyon in Jack County.

4.5 Upon receipt of the invoice, Riley Livestock, Inc. wrote a check dated March 31, 2015 in the amount of $798,319.08. This check was made payable to Midwestern Cattle. At the request of Midwestern Cattle, the check was delivered Points West Community Bank for deposit into Midwestern Cattle's bank account.

ORIGINAL PETITION IN INTERVENTION – PAGE 3

R017

4.6     After receiving and depositing the check, Midwestern Cattle failed to deliver the 554 head of cattle to Intervenors.

4.7     Midwestern Cattle paid itself a commission of $5,335.10 for the sale of the 554 head of cattle.

4.8     To date, Midwestern Cattle has failed to deliver the 554 head of cattle to Intervenors. To date, Midwestern Cattle has failed to return the $798,319.08 that Intervenors paid.

4.9     Midwestern Cattle filed the present lawsuit against Defendants Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon for what it calls a "deplorable scheme" by its agent to defraud others. Intervenors are victims of that scheme committed by Midwestern Cattle's agent. In addition, Midwestern Cattle retained the benefits of the fraudulent scheme committed by its agent. As such, Midwestern Cattle is liable and responsible for the harm caused by its agents in defrauding Intervenors.

## 5.0     Conditions Precedent

5.1     With respect to Intervenors' claims, all conditions precedent have been performed or have occurred. TRCP 54.

## 6.0     Cause of Action for Violations of the Deceptive Trade Practices Act

6.1     Intervenors incorporate the allegations contained in Section 4 above as if fully set forth herein.

6.2     Intervenors are consumers as that term is defined under the Texas Deceptive Trade Practices Act ("DTPA"). See Texas Business & Commerce Code §17.41, *et. seq.* The cattle are "goods" as that term is defined under the DTPA. See Texas Business & Commerce Code §17.41, *et. seq.* As such, Midwestern Cattle and Lyon Defendants (collectively

R018

"Defendants") can be sued under the DTPA.

6.3    Through the conduct described above, Defendants committed false, deceptive, and misleading acts or omissions in violation of §17.46(b) as follows:

- Defendants caused confusion or misunderstanding as to the sources, sponsorship, approval, or certification of goods or services. *See* TEX. BUS. & COMM. CODE §17.46(b)(2);

- Defendants represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. *See* TEX. BUS. & COMM. CODE §17.46(b)(5);

- Defendants advertised goods or services with intent not to sell them as advertised. *See* TEX. BUS. & COMM. CODE §17.46(b)(9);

- Defendants represented that an agreement conferred rights, remedies or obligations that it did not have or involve. *See* TEX.BUS. & COMM.CODE §17.46(b)(12);

- Defendants failed to disclose information concerning goods or services which was known at the time of the transaction and the failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. *See* TEX.BUS. & COMM.CODE §17.46(b)(24)

6.4    Intervenors relied on the false, misleading or deceptive act or practice to their detriment when Intervenors paid $798,319.08 for 554 head of cattle that were not delivered.

6.5    Defendants also committed an unconscionable course of action prohibited by TEX.BUS. & COMM.CODE §17.50(a)(3). Defendants acted to Intervenors' detriment by taking advantage of Intervenors' lack of knowledge and capacity to a grossly unfair degree.

6.6    Defendants' actions were the actual, proximate and producing cause of Intervenors' damages more fully set forth below.

6.7    Defendants committed this misconduct knowingly and willfully as those terms are used in TEX.BUS. & COMM.CODE §17.50(b)(1).

ORIGINAL PETITION IN INTERVENTION – PAGE 5

**7.0 Cause of Action for Breach of Contract**

7.1 Intervenors incorporate the allegations contained in Section 4 above as if fully set forth herein.

7.2 The agreement between Midwestern Cattle and Intervenors to purchase 554 head of cattle was a contract.

7.3 As set forth above, Midwestern Cattle breached this agreement by failing to provide the 554 head of cattle after Intervenors made payment.

7.4 This is a breach of contract and has resulted in damages to Intervenors more fully set forth below.

**8.0 Cause of Action for Fraud (Misrepresentation)**

8.1 Intervenors incorporate the allegations contained in Section 4 above as if fully set forth herein. Based on the foregoing allegations, Intervenors assert claims for fraud by misrepresentation and aiding and abetting fraud against Defendants. This claim includes a claim of fraud in the inducement that induced Intervenors to enter into the agreement to purchase the 554 head of cattle.

8.2 Tony E. Lyon d/b/a Lyon Farms, as Midwestern Cattle's agent, made representations that were false and material that he knew were false or made recklessly without knowledge of its truth.

8.3 Tony E. Lyon d/b/a Lyon Farms, as Midwestern Cattle's agent, made these representations with the intent that Intervenors act upon them by sending the check for $798,319.08 for the purchase of the 554 head of cattle to Midwestern Cattle. Intervenors relied upon those false representations by writing the check and sending it to Midwestern Cattle Marketing, LLC for the 554 head of cattle.

8.4     These representations caused injury to Intervenors and were a proximate cause of damages to Intervenors more fully set forth below.

8.5     Owen Lyon and Monna Lyon knowingly aided and abetted Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farm's fraud (including fraudulent inducement). As such, Owen Lyon and Monna Lyon is jointly and severally liable to Intervenors along with Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farm for the harm resulting from this fraud. To the extent necessary, Intervenors invoke the doctrine set forth in Restatement (Second) of Torts §876.

8.6     Intervenors are entitled to recover damages more fully set forth below, including the $798,319.08 paid to Midwestern Cattle.

## 9.0     Cause of Action for Fraud (Non-Disclosure)

9.1     Intervenors assert claims against Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farm for fraud by non-disclosure.

9.2     Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farm concealed from and failed to disclose certain material facts to Intervenors that Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farms had a duty to disclose.

9.3     Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farm knew Intervenors did not know these facts and did not have an equal opportunity to discover those facts.

9.4     Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farm remained deliberately silent when they had a duty to speak. By remaining silent, Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farms intended to induce Intervenors to pay for the 554 head of cattle they never received.

9.5     Intervenors relied on the non-disclosure of these facts by Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farms and sustained injury as a result of this non-disclosure.

R021

9.6     Intervenors are entitled to recover damages, including the $798,319.08 paid for the 554 head of cattle.

**10.0    Cause of Action for Money Had and Received**

10.1    Intervenors assert claims against Defendants for money had and received.

10.2    As set forth above, Intervenors paid $798,351.19, which included a $5,335.10 commission for 554 head of cattle.  These funds were received and deposited by Midwestern Cattle.  Defendants never provided the 554 head of cattle.

10.3    As a result, Defendants hold funds that in equity and good conscience belong to Intervenors, and Intervenors are entitled to recover from Defendants for money had and received.

10.4    Intervenors are entitled to damages in the amount of funds had and received by Defendants that in equity and good conscience belong to Intervenors.

**11.0    Damages**

11.1    As a result of the acts and omissions set forth above, Intervenors have sustained actual damages.  These damages include direct damages and consequential damages resulting from Defendants' wrongful conduct.

11.2    The acts and omissions more fully described above by Intervenors, singularly or in combination thereof, have been a direct, proximate and/or producing cause of damages to Intervenors in an amount that exceeds the jurisdictional limits of this Court.  The damages sustained by Intervenors are general and specific, as well as direct and consequential. Intervenors' damages include, but are not limited to, out-of-pocket losses, benefit of the bargain losses, loss of use damages, lost opportunity damages, lost profits, loss of earning capacity, and all other losses reasonably flowing from the conduct of Intervenors.

R022

11.3    Pursuant to DTPA §17.50, Intervenors are entitled to recover economic damages. Intervenors are entitled to recover three times the amount of economic damages because Defendants committed its misconduct knowingly. Intervenors are entitled to injunctive relief, court costs, reasonable and necessary attorneys' fees and prejudgment interest.

11.4    Intervenors are entitled to recover reasonable and necessary attorney fees pursuant to Texas Civil Practice & Remedies Code §38.001 and Texas Business & Commerce Code §17.50.

11.5    Intervenors are entitled to pre-judgment and post-judgment interest at the highest rate allowed by law. Intervenors are also entitled to recover all costs of court.

**12.0    Exemplary Damages**

12.1    The acts and omissions of Tony Lyon more fully set forth above evidence a specific intent to enrich himself by causing substantial harm to Intervenors. As such, the imposition of exemplary damages in a sufficient amount to be determined by the jury against Tony Lyon is warranted to make an example of Tony Lyon and to deter others from engaging in similar conduct.

12.2    Midwestern Cattle is liable for exemplary damages based on the wrongful conduct of its agent (Tony Lyon). Tony Lyon had a prior history of fraudulent conduct with respect to cattle sales. Tony Lyon was unfit to serve as the agent for Midwestern Cattle in the role and with the responsibilities Midwestern Cattle bestowed upon him. Midwestern Cattle was reckless in employing Tony Lyon in that capacity. Additionally and alternatively, Midwestern Cattle ratified or approved the acts of Tony Lyon with respect to the specific sale made to Intervenors. Among other things, Midwestern Cattle retained the commission charged with respect to that sale.

ORIGINAL PETITION IN INTERVENTION – PAGE 9

R023

12.3    Midwestern Cattle is also liable for exemplary damages for the wrongful conduct of Tony Lyon under Texas Civil Practice & Remedies Code §41.005(c).

**13.0    Midwestern Cattle is liable for the wrongful conduct of Tony Lyon**

13.1    Midwestern Cattle is liable for the wrongful conduct of Tony Lyon d/b/a Lyon Farms under the doctrine of agency or apparent authority as a result of Midwestern Cattle admitting that Tony Lyon d/b/a Lyon Farms was their agent.  Specifically, Midwestern Cattle provided Tony Lyon with a Midwestern Cattle checkbook and signature stamp to conduct Midwestern Cattle business.  Alternatively, Midwestern Cattle is liable for the wrongful conduct of Tony Lyon d/b/a Lyon Farms under the doctrine of apparent authority because it took affirmative steps to clothe Tony Lyon d/b/a Lyon Farms with authority to act on its behalf, and Intervenors relied on those acts in dealing with Tony Lyon d/b/a Lyon Farms as an agent of Midwestern Cattle.

13.2    Midwestern Cattle is jointly and severally liable for the damages caused by Tony Lyon d/b/a Lyon Farms' fraud by misrepresentation (including fraudulent inducement) for aiding and abetting such conduct as set forth in Section 8 above.

13.3    Midwestern Cattle is jointly and severally liable for the damages caused by Tony Lyon d/b/a Lyon Farms' fraud by non-disclosure (including fraudulent inducement) for aiding and abetting such conduct as set forth in Section 9 above.

**14.0    Civil Conspiracy**

14.1    Intervenors assert that Tony Lyon d/b/a Lyon Farms; Owen Lyon; and Monna Lyon engaged in a civil conspiracy to defraud Intervenors.

14.2    The members of the conspiracy included Tony Lyon d/b/a Lyon Farms; Owen Lyon; and Monna Lyon.

R024

14.3    The object of the conspiracy was to induce Intervenors to pay for cattle that they would never receive.

14.4    The members of the conspiracy had a meeting of the minds on the object or course of action, and one or more members committed an unlawful overt act to further the object or course of action as more fully set forth above.

14.5    Intervenors suffered injury and sustained damages based upon this conduct.

## 15.0    Ratification

15.1    Midwestern Cattle is also liable for the acts and omissions of Tony Lyon d/b/a Lyon Farms under the doctrine of Ratification.

15.2    Tony Lyon d/b/a Lyon Farms was an agent for Midwestern Cattle. Intervenors entered into a transaction with this agent. Midwestern Cattle Marketing, LLC approved by word, act or conduct after acquiring full knowledge of the act that gave validity to their acts including but not limited to allowing Tony Lyon d/b/a Lyon Farms to solicit funds for the 554 head of cattle and taking a commission for cattle that were never provided to Intervenors.

## 16.0    Demand for Jury

16.1    Intervenors demand their right to a jury trial afforded by the Texas Constitution and the United States Constitution and hereby tender the requisite fee to the district clerk.

## 17.0    Request for Disclosure

17.1    Pursuant to TRCP 194, Midwestern Cattle and Lyon Defendants are requested to disclose, in the time period prescribed by TRCP 194.3, the information or material described in TRCP 194.2(a) - (l).

WHEREFORE, Intervenors requests that Midwestern Cattle and Lyon Defendants be cited to appear and answer, and that on final trial Intervenors have:

ORIGINAL PETITION IN INTERVENTION – PAGE 11

R025

(a) Judgment against Midwestern Cattle Marketing, LLC, Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon for actual, statutory and compensatory damages in an amount in excess of the minimum jurisdictional limits of the Court for compensatory damages more fully set forth above;

(b) Judgment against Midwestern Cattle Marketing, LLC, Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon for exemplary damages as set forth above;

(c) Reasonable and necessary attorney fees as set forth above;

(d) Pre-judgment interest and post-judgment interest at the highest rates allowed by law; and

(e) Costs of suit; and

(f) Such other and further relief to which Intervenors may be justly entitled.

Respectfully submitted,

SIMPSON, BOYD, POWERS & WILLIAMSON

Derrick S. Boyd
State Bar No. 00790350
Michael A. Simpson
State Bar No. 18403650
Kristy P. Campbell
State Bar No. 24041684
P.O. Box 957
105 N. State Street, Suite B
Decatur, Texas 76234
Telephone No. (940) 627-8308
Facsimile No. (940) 627-8092

BY: _____

ATTORNEYS FOR INTERVENORS

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that a true and correct copy of Intervenor's Petition in Intervention was delivered via fax and/or certified mail return receipt requested to all counsel of record on this 24th day of November, 2015.

R026

CAUSE NO. 15-07-061

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| vs. | § § | |
| TONY E. LYON d/b/a LYON FARMS, individually, OWEN LYON, individually, and MONNA LYON, individually, | § § § § | JACK COUNTY, TEXAS |
| Defendants. | § § § | |
| and | § § | |
| NORTHWEST CATTLE FEEDERS, L.L.C. and RILEY LIVESTOCK, INC., | § § § | |
| Intervenors. | § | 271ST JUDICIAL DISTRICT |

**PLAINTIFF'S MOTION TO STRIKE PETITION IN INTERVENTION,
AND ALTERNATIVE MOTION TO SEVER**

Plaintiff Midwestern Cattle Marketing, LLC ("Plaintiff") moves the Court to strike the Petition in Intervention (the "Intervention") filed by Northwest Cattle Feeders, LLC and Riley Livestock, Inc. (collectively, "Intervenors"), and, alternatively, if the Court denies Plaintiff's motion to strike, Plaintiff moves the Court to sever Intervenors' claims into a separately numbered cause and realign the parties. *See* TEX. R. CIV. P. 60.

**INTRODUCTION**

1. This is a suit to recover the proceeds of a fraudulent scheme the Lyon Defendants perpetrated using the name George Cattle Company. The Intervention does not relate to the George Cattle Company scheme.

2. The Court should strike the intervention because Intervenors fail to plead a justiciable interest in the underlying lawsuit that would grant them the right to intervene under

**PL.'S MOTION TO STRIKE PET. IN INTERVENTION, ETC.** **PAGE 1**

R027

Rule 60. They do not identify a relationship between Intervenors and the Defendant, any interest held by Intervenors in the property at issue (*i.e.*, the proceeds from the George Cattle Company scheme), or that they are entitled to any of the recovery sought by Plaintiff. Instead, the Intervention discusses a transaction unrelated to George Cattle Company. Put simply, Intervenors do not have a justiciable interest in this lawsuit and seek to unnecessarily multiply the issues before the Court without adequate reason or justification.

## GROUNDS FOR MOTION

3. Under Rule 60, "Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. When a party files a motion to strike an intervention, the intervenor has the burden of proof. *In re Union Carbide Corp.*, 273 S.W.3d 152, 155 (Tex. 2008).

4. **No Justiciable Interest.** An intervening party must have a justiciable interest in the pending suit in order to have a right to intervene under Rule 60 of the Texas Rules of Civil Procedure. *Id.* at 154-55; *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). "[T]he intervenor's interest must be such that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent of at least a part of the relief sought in the original suit." *In re Union Carbide Corp.*, 273 S.W.3d at 155 (internal citations omitted).

5. The justiciable interest requirement was designed to protect "pending cases from having interlopers disrupt the proceedings." *Id.* In this case, that is exactly what we have. The interlopers (*i.e.*, the Intervenors) are seeking to unnecessarily complicate the pending action by injecting unrelated claims that do not arise from and have no relation to the transaction forming the basis of this lawsuit. The Intervention relates to an agreement to sell specified cattle. It

R028

contains no allegations that relate to the George Cattle Company scheme, nor do Intervenors have any claims for relief that deal in any way with the money Plaintiff is seeking related to the George Cattle Company scheme.

6.      The only commonality between the Lyon Defendants and Intervenors appears to be they each occupy a position adverse to Plaintiff.  Such a tenuous relationship does not establish a justiciable interest sufficient to support intervention by the interloping Intervenors. *See id*. at 154-55 (stating that the mere fact that plaintiff and intervenor each sought a recovery from a common defendant did not give intervenor a justiciable interest in the original lawsuit filed by plaintiff).

7.      **Multiplication of Issues.**   The Intervention will multiply the issues and complicate this case.  *See Guaranty Fed. Sav. Bank*, 793 S.W.2d at 657.  The Intervention would add two new parties, new claims, an additional $800,000 transaction involving an otherwise non-involved party, and completely new fact issues, none of which involve the George Cattle Company.  The Intervention would require new depositions of the three Lyon Defendants, who Plaintiff has already deposed.  The Intervention could delay and lengthen the trial.  And, importantly, the intervention could cause jury confusion in that Intervenors seek to associate Plaintiff with the Lyon Defendants, who both Plaintiff and Intervenors have alleged to be untrustworthy.

8.      **The Intervention is Not Essential.**   The Intervention is not essential to effectively protect Intervenors' interests.  *See Guaranty Fed. Sav. Bank*, 793 S.W.2d at 657; *Surgitek, Bristol-Meyers Corp. v. Abel*, 997 S.W.2d at 598, 604 (Tex. 1999) (defining "essential" to mean "indispensably necessary" and "necessary, such that one cannot do without it").  Intervenors' claims are alleged to have occurred in 2015, and are in no danger of being barred by

limitations. Intervenors do not seek any relief related to the money Plaintiff is seeking from Defendants. In short, Intervenors have neither pled nor established that their participation in this lawsuit is so necessary to the protection of their interests that they will be left without recourse if their Intervention is not allowed.

## ALTERNATIVE MOTION TO SEVER AND REALIGN

9.     The Court has broad authority over petitions in intervention, including the authority to order that the petition in intervention be severed from the existing lawsuit. *Saldana v. Saldana*, 791 S.W.2d 316, 320 (Tex. App. — Corpus Christi 1990, no pet.) A claim is severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Guaranty Fed. Sav. Bank*, 793 S.W.2d at 658.

10.     Intervenors' claims satisfy these three prongs. Intervenors seek to add five causes of action, all of which depend on different facts from the causes of action asserted by Plaintiff in the original lawsuit. Intervenors' claims are capable of being asserted in an independent lawsuit. Each of Intervenors' claims arises out of a transaction related to 554 head of cattle, a transaction that has no relation to the transactions at issue in the underlying lawsuit — the George Cattle Company scheme. Thus, the claims to be severed are not interwoven with the claims asserted in the original lawsuit and are properly severable if not stricken by the Court.

11.     Finally, if the Court severs the Intervenors' claims against Plaintiff into a separately numbered cause, Plaintiff requests that the parties be realigned in the new cause to place the Intervenors as plaintiffs because Plaintiff has not asserted counterclaim against Intervenors at this time.

R030

**WHEREFORE,** Plaintiff prays that the Court strike the Intervention, or, in the alternative, sever the Intervenors' claims into a separately numbered cause and realign the parties, and grant Plaintiff such other or further relief, legal or equitable, to which Plaintiff may be justly entitled or the Court deems proper.

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By: */s/ Christopher B. Trowbridge*
Christopher B. Trowbridge
ctrowbridge@bellnunnally.com
Texas Bar No. 24008182
R. Heath Cheek
hcheek@bellnunnally.com
Texas Bar No. 24053141
Gregory D. Kelminson
gkelminson@bellnunnally.com
State Bar No. 24070045

3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204-2429
(214) 740-1400 Telephone
(214) 740-1499 Facsimile

**ATTORNEYS FOR PLAINTIFF MIDWESTERN CATTLE MARKETING, LLC**

## CERTIFICATE OF CONFERENCE

A conference was held on December 18, 2015 with Kristy P. Campbell, attorney for Intervenors, on the merits of this motion. Agreement could not be reached; therefore, it is presented to the Court for determination.

/s/ *Christopher B. Trowbridge*
Christopher B. Trowbridge

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was served by delivering the same to the person listed below in the manner and on the date indicated.

**VIA TXCOURTS.GOV**

Steven C. Bankhead, Esq.
8111 Preston Road, Suite 500
Dallas, Texas 75225-6377

**VIA TXCOURTS.GOV**

James S. Robertson, III, Esq.
Eric S. Weber, Esq.
Glast, Phillips & Murray, P.C.
14801 Quorum Drive, Suite 500
Dallas, Texas 75254-1449

**VIA TXCOURTS.GOV**

Derrick S. Boyd, Esq.
Michael A. Simpson, Esq.
Kristy P. Campbell, Esq.
Simpson, Boyd, Powers & Williamson
P.O. Box 957
105 N. State Street, Suite B
Decatur, Texas 76234

**DATED** this 18th day of December, 2015.

/s/ *Christopher B. Trowbridge*

2451781_1.DOCX / 9964.1

CAUSE NO. 15-07-061

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC, | § § § | IN THE DISTRICT COURT |
| *Plaintiff*, | § § | |
| vs. | § § | 271ST JUDICIAL DISTRICT |
| TONY E. LYON D/B/A LYON FARMS, INDIVIDUALLY, OWEN LYON, INDIVIDUALLY AND MONNA LYON, INDIVIDUALLY, | § § § § § | |
| *Defendants,* | § § | |
| and | § § | |
| NORTHWEST CATTLE FEEDERS, L.L.C., and RILEY LIVESTOCK, INC., | § § § | |
| *Intervenors.* | § | JACK COUNTY, TEXAS |

**TONY LYON'S  STATEMENT IN OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE PETITION IN INTERVENTION,
AND ALTERNATIVE MOTION TO SEVER**

TONY LYON, defendant in the above-numbered and entitled cause and herein called the

"Lyon", files this statement in opposition to the motion to strike petition in intervention and

alternative motion to sever filed by Plaintiff, MIDWESTERN CATTLE MARKETING, LLC,

and would show the Court the following:

1.      The Lyon has been sued in this case by Plaintiff and by Intervenors and the claims

against the Lyons, these claims against the Lyon are wholly without merit but that's for another

day — overlap and are interwoven.

_____

**TONY LYON'S  STATEMENT IN OPPOSITION TO                                        PAGE 1**
**PLAINTIFF'S MOTION TO STRIKE PETITION IN INTERVENTION**
**AND ALTERNATIVE MOTION TO SEVER**

R033

2. Dismissal of Intervenors' claims in response to Plaintiff's motion at hand will undoubtedly result in a second case being filed against Lyon (and the Plaintiff). An order of severance likewise will result in a separate proceeding against Lyon. Either result would lead to unnecessary extra expense to Lyon, an expense he can ill afford. Since Lyons has to defend himself against the Plaintiff's and Intervenors' allegations made in this lawsuit, Lyon would prefer to do so in one forum, in one case, under one scheduling order, at one trial, before one jury. It is bad enough defending one lawsuit; it is doubly bad defending a second lawsuit over claims related to, and part of, the first lawsuit and that could be litigated in the first lawsuit, more efficiently and more economically.

FOR THESE REASONS, Lyon request the Court to deny Plaintiff's motion to strike Intervenors' plea in intervention and Plaintiff's alternative motion to sever, unless the Court were to dismiss with prejudice Intervenors' claims against the Lyons, in which case, the Lyons of course would support an order dismissing Intervenors' claims.

Lyon also request such other and further relief to which they may be justly entitled.

Respectfully submitted:

/s/ Steven C. Bankhead
Steven C. Bankhead
State Bar No. 01676700
8111 Preston Rd., Suite 500
Dallas, Texas 75225
214-750-8555
214-750-8001 (Facsimile)
stevebankhead@sbcglobal.net

ATTORNEY FOR DEFENDANT
TONY LYON

R034

**CERTIFICATE OF SERVICE**

I certify that on February 4, 2016, I served a true and correct copy of the foregoing document on the following person(s) by **ELECTRONIC SERVICE** in accordance with Texas Rule of Civil Procedure 21a:

Christopher B. Trowbridge
R. Heath Cheek
Gregory D. Kelminson
BELL, NUNNALLY & MARTIN, LLP
3232 McKinney Avenue, Suite 1400
Dallas, TX 75204-2429

*Attorneys for Plaintiff*

James S. Robertson
Glast, Phillips & Murray
14801 Quorum Driver, Suite 500
Dallas, Texas 75254

*Attorneys for Owen and Monna Lyon*

Derrick S. Boyd
Michael A. Simpson
Kristy P. Campbell
SIMPSON, BOYD, POWERS & WILLIAMSON
P.O. Box 957
Decatur, TX 76234

*Attorneys for Intervenors*

/s/ Steven C. Bankhead
_____
Steven C. Bankhead

**TONY LYON'S STATEMENT IN OPPOSITION TO**                                      **PAGE 3**
**PLAINTIFF'S MOTION TO STRIKE PETITION IN INTERVENTION**
**AND ALTERNATIVE MOTION TO SEVER**

R035

CAUSE NO. 15-07-061

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC, | § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| vs. | § § | 271ST JUDICIAL DISTRICT |
| TONY E. LYON D/B/A LYON FARMS, INDIVIDUALLY, OWEN LYON, INDIVIDUALLY AND MONNA LYON, INDIVIDUALLY, | § § § § § | |
| *Defendants,* | § § | |
| and | § § | |
| NORTHWEST CATTLE FEEDERS, L.L.C., and RILEY LIVESTOCK, INC., | § § § | |
| *Intervenors.* | § | JACK COUNTY, TEXAS |

## OWEN LYON'S AND MONNA LYON'S STATEMENT IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE PETITION IN INTERVENTION, AND ALTERNATIVE MOTION TO SEVER

OWEN LYON and MONNA LYON, defendants in the above-numbered and entitled cause and herein called the "Lyons", file this statement in opposition to the motion to strike petition in intervention and alternative motion to sever filed by Plaintiff, MIDWESTERN CATTLE MARKETING, LLC, and would show the Court the following:

1.     The Lyons have been sued in this case by Plaintiff and by Intervenors and the claims against the Lyons —  the claims against the Lyons are wholly without merit but that's for another day — overlap and are interwoven.

---

**OWEN LYON'S AND MONNA LYON'S STATEMENT IN OPPOSITION TO**      **PAGE 1**
**PLAINTIFF'S MOTION TO STRIKE PETITION IN INTERVENTION**
**AND ALTERNATIVE MOTION TO SEVER**
6189165_1 – GPM File No. 12798.20

R036

2.	Dismissal of Intervenors' claims in response to Plaintiff's motion at hand will undoubtedly result in a second case being filed against the Lyons (and the Plaintiff).  An order of severance likewise will result in a separate proceeding against the Lyons.  Either result would lead to unnecessary extra expense to the Lyons, an expense they can ill afford.  Since the Lyons have to defend themselves against the Plaintiff's and Intervenors' allegations made in this lawsuit, the Lyons would prefer to do so in one forum, in one case, under one scheduling order, at one trial, before one jury.  It is bad enough defending one lawsuit; it is doubly bad defending a second lawsuit over claims related to, and part of, the first lawsuit and that could be litigated in the first lawsuit, more efficiently and more economically.

FOR THESE REASONS, the Lyons request the Court to deny Plaintiff's motion to strike Intervenors' plea in intervention and Plaintiff's alternative motion to sever, unless the Court were to dismiss with prejudice Intervenors' claims against the Lyons, in which case, the Lyons of course would support an order dismissing Intervenors' claims.

The Lyons also request such other and further relief to which they may be justly entitled.

R037

Respectfully submitted:


/s/ James S. Robertson, III
James S. Robertson, III
State Bar No. 17061075
Direct Dial:  972-419-7136
Direct Fax:  469-206-5048
jrobertson@gpm-law.com
Eric S. Weber
State Bar No. 24071835
Direct Dial: 972-419-7138
Direct Fax: 469- 206-5065
eweber@gpm-law.com
GLAST, PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254-1449

ATTORNEYS FOR DEFENDANTS,
OWEN LYON AND MONNA LYON

**CERTIFICATE OF SERVICE**

I certify that on February 4, 2016, I served a true and correct copy of the foregoing document on the following person(s) by **ELECTRONIC SERVICE** in accordance with Texas Rule of Civil Procedure 21a:

Christopher B. Trowbridge
R. Heath Cheek
Gregory D. Kelminson
BELL, NUNNALLY & MARTIN, LLP
3232 McKinney Avenue, Suite 1400
Dallas, TX 75204-2429

*Attorneys for Plaintiff*

Derrick S. Boyd
Michael A. Simpson
Kristy P. Campbell
SIMPSON, BOYD, POWERS & WILLIAMSON
P.O. Box 957
Decatur, TX 76234

*Attorneys for Intervenors*

Steven C. Bankhead
8111 Preston Rd., Suite 500
Dallas, TX 75225

*Attorney for Tony E. Lyon d/b/a Lyon Farms*


*/s/ James S. Robertson, III*
James S. Robertson, III

R039

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC | § § § | IN THE DISTRICT COURT |
| Plaintiff | § § | |
| vs. | § § | |
| TONY E. LYON d/b/a LYON FARMS, OWEN LYON and MONNA LYON | § § § | |
| Defendant | § § | JACK COUNTY, TEXAS |
| and | § § | |
| NORTHWEST CATTLE FEEDERS, L.L.C. and RILEY LIVESTOCK, INC. | § § § | |
| Intervenors | § | 271ST JUDICIAL DISTRICT |

## FIRST AMENDED PETITION IN INTERVENTION

TO THE HONORABLE JUDGE OF THE COURT:

Northwest Cattle Feeders, LLC and Riley Livestock, Inc. (hereinafter collectively "Intervenors") file this First Amended Petition in Intervention, and in support of same would respectfully show as follows:

### 1.0 Discovery Level

1.1 Pursuant to TRCP 190.1, Intervenors respectfully requests that discovery in this case be conducted under Level 3 by further order of this Court, as set forth in TRCP 190.4.

### 2.0 Grounds for Intervention

2.1 Midwestern Cattle Marketing, LLC (hereinafter Midwestern Cattle) filed the present lawsuit against Defendants Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon for what it calls a "deplorable scheme" by its agent to defraud others.

Intervenors are victims of that scheme committed by Midwestern Cattle's agent. In addition, Midwestern Cattle retained the benefits of the fraudulent scheme committed by its agent. As such, Midwestern Cattle is liable and responsible for the harm caused by its agents in defrauding Intervenors.

2.2     This litigation arises out of a scheme perpetuated by Tony E. Lyon to defraud purchases of cattle. Intervenors were purchasers victimized by this fraudulent scheme. Lyon committed this scheme while acting as an agent for Midwestern Cattle. Midwestern Cattle also alleges that Owen Lyon and Monna Lyon were also participants in the scheme involving the alleged purchase and sell of cattle.

2.3     On or about July 6, 2015, Midwestern Cattle filed this suit against Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon (hereafter sometimes collectively referred to as "Defendants") seeking damages arising from Lyon's conduct as Midwestern Cattle's agent.

2.4     As set forth below, Intervenors are entitled to recover legal and equitable relief against Midwestern Cattle and Defendants. As such, Intervenors have a justiciable interest in this suit, and are proper parties to the present suit. Intervention will not unnecessarily or unreasonably complicate the case by an excessive multiplication of issues, and is essential to protect Intervenors' interest.

2.5     Intervenors claims will be affected by resolution of the present case. Among other things, the resolution of Intervenors claims will be affected by resolution of the pending case because the same scheme by the same parties that victimized Intervenors is alleged by Plaintiff. Moreover, there is a joint interest in the cattle Plaintiff seized from Defendants, or proceeds from sale of that cattle.

R041

2.6     Intervenors, in their own right, are entitled to assert the causes of action set forth herein. Intervenors, in their own right, were entitled to assert this action in their own name against Plaintiff and Defendants, and any cross-claims or counterclaims between Plaintiff and Defendants would be properly before the Court in that suit.

2.7     Intervention will not unduly complicate or confuse any of the issues in this case. To the contrary, there is substantial overlap between the issues raised by Plaintiff's claims and the issues raised by Intervenors' claims, and such claims are interwoven and arise from the same operative set of facts – namely the same cattle fraud scheme.

2.8     Adjudication and disposition of this case without intervention could reasonably impair or impede Intervenors' ability to protect their interest in recovering damages incurred as a result of the cattle fraud scheme, and in recovering whatever interest Intervenors held in the cattle Plaintiff seized from Defendants before filing suit.

## 3.0     Venue

3.1     Venue is proper in Jack County for the claims asserted by Northwest Cattle Feeders pursuant to Texas Civil Practice & Remedies Code §15.002(a)(2) because one or more parties are residents of Jack County, Texas. Additionally, venue is proper under Texas Civil Practice & Remedies Code §15.002(a)(1) because a substantial part of the acts and omissions giving rise to Intervenors' claims occurred in Jack County, Texas. Venue is also proper in Jack County, Texas under Texas Civil Practice & Remedies Code §15.062.

3.2     Venue is proper in Wise County for the claims asserted by Riley Livestock, Inc. pursuant to Texas Civil Practice & Remedies Code §15.002(a)(2) because Lyon Defendants are residents of Jack County, Texas. Additionally, venue is proper under Texas Civil Practice & Remedies Code §15.002(a)(1) because a substantial part of the

R042

acts and omissions giving rise to Intervenors' claims occurred in Jack County, Texas. Venue is also proper in Jack County, Texas under Texas Civil Practice & Remedies Code §15.062.

## 4.0 Factual Background

4.1 Midwestern Cattle admits that it acts as cattle brokers. Midwestern Cattle buys cattle from a seller and then sells the cattle to a buyer. Intervenors operate a feed lot and otherwise trade in cattle. Prior to 2015, Intervenors were introduced by Jason O'Connell of Midwestern Cattle to Tony Lyon d/b/a Lyon Farms (hereinafter "Lyon"). Lyon was represented to Intervenors to be a cattle order buyer for Midwestern Cattle operating in Texas. From that introduction, a business relationship developed between Intervenors and Midwestern Cattle (through its agent Tony Lyon) for the purchase and sale of cattle.

4.2 In March 2015, after multiple transactions that appeared to be successful, Intervenors entered into an agreement with Midwestern Cattle through Lyon to purchase 554 head of cattle. Before entering into this agreement, Jeff Cox (on behalf of Intervenors) met with Lyon in Jack County to discuss the purchase. Lyon represented that cattle in a pasture he showed Cox were the 554 head of cattle Intervenors were purchasing. At all times relevant herein in his dealings with Cox (on behalf of Intervenors), Lyon was acting as an agent and representative of Midwestern Cattle.

4.3 Midwestern Cattle admits that Tony Lyon was its agent. Midwestern Cattle provided Tony Lyon with a Midwestern Cattle checkbook and signature stamp enabling him to conduct the business of Midwestern Cattle. This permitted Lyon to buy and sell cattle on a "float" basis. At no time did Midwestern Cattle investigate Lyon's background to determine whether he was fit for such authority to act on behalf of Midwestern Cattle.

R043

4.4    After Intervenors agreed to purchase the cattle in question, Midwestern Cattle sent an invoice to Intervenors dated March 31, 2015. The recipient of the invoice was Northwest Cattle Feeders, LLC. The amount of the invoice was $798,351.19. The invoice was specifically for 554 head of cattle with the description "Steers sold from Perrin, TX." This invoice relates to the specific cattle Cox discussed with Lyon in Jack County.

4.5    Upon receipt of the invoice, Riley Livestock, Inc. wrote a check dated March 31, 2015 in the amount of $798,319.08. This check was made payable to Midwestern Cattle. At the request of Midwestern Cattle, the check was delivered Points West Community Bank for deposit into Midwestern Cattle's bank account. Midwestern specifically attested that the "livestock referenced by this document or other communications specific to the transaction and transferred are of US origin (born & raised)."

4.6    After receiving and depositing the check, Intervenors never saw the cattle. The cattle were to be delivered to Francis Farms for feeding and delivery for sale 60-90 days later. However, when it came time to sell the 554 head of cattle, Midwestern Cattle failed to deliver the 554 head of cattle to Intervenors.

4.7    Midwestern Cattle paid itself a commission of $5,335.10 for the sale of the 554 head of cattle. Midwestern Cattle received and retained this commission despite failing to deliver the cattle.

4.8    To date, Midwestern Cattle and its agent (Tony Lyon) have failed to deliver the 554 head of cattle to Intervenors. To date, Midwestern Cattle and its agent (Tony Lyon) have failed to return the $798,319.08 that Intervenors paid.

R044

4.9    In June 2015, shortly before time for the cattle to be sold, Midwestern Cattle informed Jeff Cox that there was "a problem" with Lyon. At no time before this conversation did Midwestern Cattle ever indicate any problems with Lyon or his operations on behalf of Midwestern Cattle in Texas.

4.10    Jeff Cox travelled to Texas to speak with Tony Lyon. When he arrived, Cox learned that other Midwestern Cattle representatives (Jason O'Connell and Tim Correll) had been present on the Lyon property. Midwestern Cattle seized approximately 892 head of cattle from Lyon Farms, and represented to Cox that the seized cattle would be used to try to "make whole" both Cox and Midwestern Cattle.

4.11    Later in 2015, 41 head of cattle were delivered to Intervenors' business location in Nebraska. These head of cattle were represented to be from the seized cattle. Intervenors liquidated the 41 head and had checks for the proceeds made out jointly to Midwestern Cattle and Northwest Cattle Feeders.

4.12    Midwestern Cattle has not disclosed what happened with the remaining seized cattle despite requests by Intervenors for this information, Upon information and belief, Midwestern Cattle has liquidated some or all of the seized cattle and retained the proceeds from those sales for its use to the exclusion of Intervenors.

## 5.0    Conditions Precedent

5.1    With respect to Intervenors' claims, all conditions precedent have been performed or have occurred. TRCP 54.

## 6.0    Constructive Trust and Accounting

6.1    Intervenors are entitled to a constructive trust over cattle or proceeds from the sale of cattle seized by Plaintiff or on behalf of Plaintiff.

R045

6.2 A constructive trust is appropriate because of the actual fraud or constructive fraud committed by Plaintiff and Defendants.

6.3 Plaintiff would be unjustly enriched by retaining benefits from the cattle seized or sold. Specifically, upon information and belief, Plaintiff took possession of 892 head of cattle to its exclusive possession, sold the cattle, and retained the proceeds from such sale to the exclusion of Intervenors.

6.4 A constructive trust over any and all cattle, proceeds from the sale of seized cattle, or other funds recovered by Plaintiff from others as a result of the wrongful conduct of its agent is appropriate and necessary to prevent unjust enrichment by Plaintiff.

6.5 Intervenors also seek an accounting for the seized cattle or any proceeds from the sale of the seized cattle.

## 7.0 Cause of Action for Breach of Contract

7.1 Intervenors incorporate the allegations contained in Section 4 above as if fully set forth herein.

7.2 The agreement between Midwestern Cattle and Intervenors to purchase 554 head of cattle was a contract. The contract is evidenced in writing by the invoice dated March 31, 2015.

7.3 Intervenors performed by tendering payment of the amount set forth in the invoice.

7.4 Midwestern Cattle failed to perform by (a) failing to deliver the 554 head of cattle. At time of sale, the 554 head of cattle were not available for Intervenors to sell; or (b) failing to return the funds paid by Intervenors when it became clear to Midwestern Cattle that the 554 head were not delivered to Intervenors to be resold.

R046

7.5 Midwestern Cattle breached its contractual obligation by failing to provide the 554 head of cattle after Intervenors made payment; and by failing to return the funds paid by Intervenors when it became clear the 554 head of cattle were not delivered to Intervenors to be resold.

7.6 This is a breach of contract and has resulted in damages to Intervenors more fully set forth below.

## 8.0 Cause of Action for Fraud (Misrepresentation)

8.1 Intervenors incorporate the allegations contained in Section 4 above as if fully set forth herein. Based on the foregoing allegations, Intervenors assert claims for fraud by misrepresentation against Tony Lyon. This claim includes a claim of fraud in the inducement that induced Intervenors to enter into the agreement to purchase the 554 head of cattle.

8.2 Tony E. Lyon d/b/a Lyon Farms ("Lyon"), as Midwestern Cattle's agent, made representations that were false and material that he knew were false or made recklessly without knowledge of its truth. The false representations include a representation that Intervenors would receive the cattle shown to Jeff Cox in March 2015 and invoiced by Midwestern Cattle on March 31, 2015, and that the 554 head of cattle identified in the March 31, 2015 invoice would be delivered and available to be resold by Intervenors after the feeding and grazing period.

8.3 Lyon, as Midwestern Cattle's agent, made these representations with the intent that Intervenors act upon them by sending the check for $798,319.08 for the purchase of the 554 head of cattle to Midwestern Cattle. Intervenors relied upon those false representations by writing the check and sending it to Midwestern Cattle Marketing, LLC for the 554 head of cattle.

R047

8.4　These representations caused injury to Intervenors and were a proximate cause of damages to Intervenors more fully set forth below.

8.5　Midwestern Cattle is liable for the fraud by misrepresentation and fraudulent inducement committed by Lyon because at all times relevant Lyon was acting as Midwestern Cattle's agent or otherwise aided and abetted such conduct as set forth in Section 14 below. To the extent necessary, Intervenors invoke the doctrine set forth in Restatement (Second) of Torts §876. Midwestern Cattle is also liable for the fraud by misrepresentation and fraudulent inducement committed by Lyon under the doctrine of ratification as set forth in Section 16 below.

8.6　Owen Lyon and Monna Lyon knowingly aided and abetted Lyon's fraud (including fraudulent inducement). As such, Owen Lyon and Monna Lyon are jointly and severally liable to Intervenors for the harm resulting from this fraud. To the extent necessary, Intervenors invoke the doctrine set forth in Restatement (Second) of Torts §876.

8.7　Intervenors are entitled to recover damages more fully set forth below.

## 9.0　Cause of Action for Fraud (Non-Disclosure)

9.1　Intervenors assert claims against Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farm ("Lyon") for fraud by non-disclosure. This claim includes a claim of fraud in the inducement that induced Intervenors to enter into the agreement to purchase the 554 head of cattle.

9.2　Midwestern Cattle and Lyon concealed from and failed to disclose certain material facts to Intervenors that Midwestern Cattle and Lyon had a duty to disclose. The information concealed includes the fact that Lyon was given access to the Midwestern Cattle checkbook to write checks on behalf of Midwestern Cattle to himself

R048

or his business interest or his family without any supervision or review by others at Midwestern Cattle; and the fact that Midwestern Cattle and Defendants were operating the cattle sales on a "float" that did not involve sales of existing cattle or actual sellers as represented. In addition, Midwestern Cattle and Lyon never disclosed prior criminal convictions of Tony Lyon related to his cattle business operations.

9.3 Midwestern Cattle and Lyon knew Intervenors did not know these facts and did not have an equal opportunity to discover those facts.

9.4 Midwestern Cattle and Lyon remained deliberately silent when they had a duty to speak. By remaining silent, Midwestern Cattle and Lyon intended to induce Intervenors to pay for the 554 head of cattle they never received. For example, Midwestern Cattle had a duty to disclose this information in response to inquiry by Jeff Cox in December 2014 concerning the business practices of Tony Lyon. Instead, Midwestern Cattle representatives stated that there was nothing improper about the business practices of Tony Lyon.

9.5 Intervenors relied on the non-disclosure of these facts by Midwestern Cattle and Lyon and sustained injury as a result of this non-disclosure.

9.6 Midwestern Cattle is liable for the fraud by non-disclosure and fraudulent inducement committed by Lyon because at all times relevant Lyon was acting as Midwestern Cattle's agent or otherwise aided and abetted such conduct as set forth in Section 14 below. To the extent necessary, Intervenors invoke the doctrine set forth in Restatement (Second) of Torts §876. Midwestern Cattle is also liable for the fraud by non-disclosure and fraudulent inducement committed by Lyon under the doctrine of ratification as set forth in Section 16 below.

R049

9.7    Owen Lyon and Monna Lyon knowingly aided and abetted Lyon's fraud (including fraudulent inducement). As such, Owen Lyon and Monna Lyon are jointly and severally liable to Intervenors for the harm resulting from this fraud. To the extent necessary, Intervenors invoke the doctrine set forth in Restatement (Second) of Torts §876.

9.8    Intervenors are entitled to recover damages more fully set forth below,.

## 10.0  Cause of Action for Money Had and Received

10.1    Intervenors assert claims against Midwestern Cattle and Defendants for money had and received.

10.2    As set forth above, Intervenors paid $798,351.19, which included a $5,335.10 commission for 554 head of cattle.  These funds were received and deposited by Midwestern Cattle.  The 554 head of cattle was never delivered for resale.

10.3    As a result, Midwestern Cattle and Defendants hold funds that in equity and good conscience belong to Intervenors, and Intervenors are entitled to recover from Midwestern Cattle and Defendants for money had and received.

10.4    Intervenors are entitled to damages in the amount of funds had and received by Midwestern Cattle and Defendants that in equity and good conscience belong to Intervenors.

## 11.0  Conversion

11.1    Upon information and belief, the 554 head of cattle (if they ever existed) were in the possession of the Lyon Defendants. At some point, upon information and belief, Plaintiff seized approximately 892 head of cattle from the Lyon Defendants.

R050

11.2     The 554 head of cattle (if they ever existed) are the rightful property of Intervenors by virtue of Intervenors' payment of the invoice received from Midwestern Cattle on March 31, 2015. The 554 head of cattle were personal property.

11.3     To the extent some or all of the 554 head of cattle Intervenors paid for were among the 892 head of cattle seized by Plaintiff from the Lyon Defendants, Intervenors assert an action for conversion against Plaintiff. By seizing the cattle from the Lyon Defendants and/or selling the cattle after seizure, Plaintiff wrongfully exercised dominion or control over the cattle.

11.4     To the extent some or none of the 554 head of cattle Intervenors paid for were not among the 892 head of cattle seized by Plaintiff from the Lyon Defendants, Intervenors assert an action for conversion against Tony Lyon d/b/a Lyon Farms. Tony Lyon d/b/a Lyon Farms wrongfully exercised dominion or control over the cattle by retaining the cattle and/or selling the cattle prior to seizure by Plaintiff.

11.5     Plaintiff is liable for any acts of conversion by Tony Lyon d/b/a Lyon Farms for the reasons set forth in Section 15 below.

11.6     Owen Lyon and Monna Lyon are liable for any acts of conversion by Tony Lyon d/b/a Lyon Farms for aiding and abetting such conduct.

11.7     Intervenors suffered injury from the conversion of the 554 head of cattle. Intervenors are entitled to damages in the form of a return of the cattle, the proceeds received from the sale of such cattle, or damages as more fully set forth below.

## 12.0  Damages

12.1     As a result of the acts and omissions set forth above, Intervenors have sustained actual damages.  These damages include direct damages and consequential damages resulting from wrongful conduct by Midwestern Cattle and Defendants

R051

12.2 The acts and omissions more fully described above by Intervenors, singularly or in combination thereof, have been a direct, proximate and/or producing cause of damages to Intervenors in an amount that exceeds the jurisdictional limits of this Court. The damages sustained by Intervenors are general and specific, as well as direct and consequential. Intervenors' damages include, but are not limited to, out-of-pocket losses, benefit of the bargain losses, loss of use damages, lost opportunity damages, lost profits, and all other losses reasonably flowing from the conduct of Intervenors.

12.3 Intervenors are entitled to recover reasonable and necessary attorney fees pursuant to Texas Civil Practice & Remedies Code §38.001.

12.4 Intervenors are entitled to pre-judgment and post-judgment interest at the highest rate allowed by law. Intervenors are also entitled to recover all costs of court.

12.5 Intervenors are also entitled to equitable relief in the form of a constructive trust and/or an accounting pertaining to the cattle seized by Midwestern Cattle from Defendants.

## 13.0 Exemplary Damages

13.1 The acts and omissions of Tony Lyon more fully set forth above evidence a specific intent to enrich himself by causing substantial harm to Intervenors. As such, the imposition of exemplary damages in a sufficient amount to be determined by the jury against Tony Lyon is warranted to make an example of Tony Lyon and to deter others from engaging in similar conduct.

13.2 Midwestern Cattle is liable for exemplary damages based on the wrongful conduct of its agent (Tony Lyon). Tony Lyon had a prior history of fraudulent conduct with respect to cattle sales. Tony Lyon was unfit to serve as the agent for Midwestern

R052

Cattle in the role and with the responsibilities Midwestern Cattle bestowed upon him. Midwestern Cattle was reckless in employing Tony Lyon in that capacity. Additionally and alternatively, Midwestern Cattle ratified or approved the acts of Tony Lyon with respect to the specific sale made to Intervenors. Among other things, Midwestern Cattle retained the commission charged with respect to that sale.

13.3    Midwestern Cattle is also liable for exemplary damages for the wrongful conduct of Tony Lyon under Texas Civil Practice & Remedies Code §41.005(c).

13.4    The statutory cap on exemplary damages does not apply in this case pursuant to Texas Civil Practice & Remedies Code §41.008(c)(9); §41.008(c)(11), or §41.008(c)(13).

**14.0  Midwestern Cattle is liable for the wrongful conduct of Tony Lyon**

14.1    Midwestern Cattle is liable for the wrongful conduct of Tony Lyon d/b/a Lyon Farms ("Lyon") under the doctrine of agency or apparent authority. Midwestern Cattle admitted and recognized that Lyon was their agent. Midwestern Cattle provided Tony Lyon with actual or apparent authority to act as its agent by providing Lyon with a Midwestern Cattle checkbook and signature stamp to conduct Midwestern Cattle business. Midwestern Cattle affirmatively represented Lyon to be its representative to Intervenors. He was Midwestern Cattle's order buyer and part of their group in Texas. Midwestern Cattle clothed Lyon with authority and ability to buy and sell cattle on Midwestern Cattle's behalf with no oversight.

14.2    Alternatively, Midwestern Cattle is liable for the wrongful conduct of Lyon under the doctrine of apparent authority because it took affirmative steps to clothe Lyon with authority to act on its behalf, and Intervenors relied on those acts in dealing with Lyon as an agent of Midwestern Cattle.

R053

14.3    Midwestern Cattle is jointly and severally liable for the damages caused by Lyon's fraud by misrepresentation (including fraudulent inducement) for aiding and abetting such conduct set forth in Section 8 above.

14.4    Midwestern Cattle is jointly and severally liable for the damages caused by Lyon's fraud by non-disclosure (including fraudulent inducement) for aiding and abetting such conduct set forth in Section 9 above.

## 15.0    Civil Conspiracy

15.1    Intervenors assert that Tony Lyon d/b/a Lyon Farms; Owen Lyon; and Monna Lyon engaged in a civil conspiracy to defraud Intervenors.

15.2    The members of the conspiracy included Tony Lyon d/b/a Lyon Farms; Owen Lyon; and Monna Lyon.

15.3    The object of the conspiracy was to induce Intervenors to pay for cattle that they would never receive.

15.4    The members of the conspiracy had a meeting of the minds on the object or course of action, and one or more members committed an unlawful overt act to further the object or course of action as more fully set forth above.

15.5    Intervenors suffered injury and sustained damages based upon this conduct.

## 16.0    Ratification

16.1    Midwestern Cattle is also liable for the acts and omissions of Tony Lyon d/b/a Lyon Farms ("Lyon") under the doctrine of Ratification.

16.2    As set forth above, Lyon was an agent for Midwestern Cattle.  Intervenors entered into a transaction with this agent.  Midwestern Cattle approved by word, act or conduct after acquiring full knowledge of the act that gave validity to their acts including

R054

but not limited to allowing Lyon to solicit funds for the 554 head of cattle and taking a commission for cattle that were never provided to Intervenors.

16.3    Even after admitting full knowledge of the fraudulent conduct committed by Tony Lyon, Midwestern Cattle retained the benefits of the transaction involving the 554 head of cattle and, as such, ratified the transaction.

## 17.0    Demand for Jury

17.1    Intervenors demand their right to a jury trial afforded by the Texas Constitution and the United States Constitution. Intervenors have previously tendered the requisite fee to the district clerk.

WHEREFORE, Intervenors requests that Midwestern Cattle and Lyon Defendants be cited to appear and answer, and that on final trial Intervenors have:

(a)    Judgment against Midwestern Cattle Marketing, LLC, Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon for actual and compensatory damages in an amount in excess of the minimum jurisdictional limits of the Court more fully set forth above;

(b)    Judgment against Midwestern Cattle Marketing, LLC, Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon for exemplary damages as set forth above;

(c)    A constructive trust over cattle Plaintiff seized from Lyon Farms in 2015 or proceeds from the sale of cattle seized from Lyon Farms by Plaintiff;

(d)    An accounting for the cattle Plaintiff seized from Lyon Farms in 2015 or proceeds from the sale of cattle seized from Lyon Farms by Plaintiff;

(e)    Reasonable and necessary attorney fees as set forth above;

(f)    Pre-judgment interest and post-judgment interest at the highest rates allowed by law; and

(g)    Costs of suit; and

(h)    Such other and further relief to which Intervenors may be justly entitled.

**FIRST AMENDED PETITION IN INTERVENTION – PAGE 16**

R055

Respectfully submitted,

SIMPSON, BOYD, POWERS & WILLIAMSON

Derrick S. Boyd
State Bar No. 00790350
Michael A. Simpson
State Bar No. 18403650
Kristy P. Campbell
State Bar No. 24041684
P.O. Box 957
105 N. State Street, Suite B
Decatur, Texas 76234
Telephone No. (940) 627-8308
Facsimile No. (940) 627-8092

BY: _____

ATTORNEYS FOR INTERVENORS

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that a true and correct copy of Intervenor's First Amended Petition in Intervention was delivered via fax and/or certified mail return receipt requested to all counsel of record on this 26th day of February, 2016.

R056

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC | § § § | IN THE DISTRICT COURT |
| Plaintiff | § § | |
| vs. | § § | |
| TONY E. LYON d/b/a LYON FARMS, OWEN LYON and MONNA LYON | § § § | |
| Defendant | § § | JACK COUNTY, TEXAS |
| and | § § § | |
| NORTHWEST CATTLE FEEDERS, L.L.C. and RILEY LIVESTOCK, INC. | § § § | |
| Intervenors | § | 271ST JUDICIAL DISTRICT |

### INTERVENORS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE PETITION IN INTERVENTION, AND ALTERNATIVE MOTION TO SEVER

#### Summary of Response

Plaintiff alleges it was a victim of a "deplorable" scheme regarding the fraudulent sale of cattle by its agent – Tony Lyon. Intervenors seek damages based on that same scheme. Intervenors also seek to recover damages from identifiable cattle that Plaintiff seized from Lyon in 2015. As such, Intervenors share an equitable interest in the accounting for the proceeds of the sale of the seized cattle by Plaintiff.

In summary, Intervenors have a justiciable interest in this lawsuit. The issues are not multiplied or unnecessarily complicated by intervention because the same witnesses and the same issues will be addressed by the Court and the Jury as to the claims asserted by Plaintiff and Intervenors. Judicial economy supports intervention "in order to avoid a multiplicity of lengthy lawsuits" concerning the same issues. *Guaranty Federal Savings Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990).

R057

The intervention is essential to Intervenors' interest in recovering damages for the cattle that were not delivered and converted by Plaintiff and Defendants. For these reasons, Intervenors respectfully request that Plaintiff's Motion to Strike be denied.

### Factual Background

Plaintiff buys cattle from a seller and then sells the cattle to a buyer. Intervenors operate a feed lot and otherwise trade in cattle. Prior to 2015, Intervenors were introduced by Plaintiff to Tony Lyon d/b/a Lyon Farms (hereinafter "Lyon"). Lyon was represented to Intervenors to be a cattle order buyer for Plaintiff operating in Texas. From that introduction, a business relationship developed between Intervenors and Plaintiff (through its agent Tony Lyon) for the purchase and sale of cattle.

In March 2015, after multiple apparently successful transactions, Intervenors entered into an agreement with Plaintiff through Lyon to purchase 554 head of cattle. Before entering into this agreement, Jeff Cox (on behalf of Intervenors) met with Lyon in Jack County to discuss the purchase. Lyon represented that cattle in a pasture he showed Cox were the 554 head of cattle Intervenors were purchasing.

After Intervenors agreed to purchase the cattle in question, Plaintiff sent an invoice to Intervenors dated March 31, 2015.[1] The recipient of the invoice was Northwest Cattle Feeders. The amount of the invoice was $798,351.19. The invoice was specifically for 554 head of cattle with the description "Steers sold from Perrin, TX." This invoice relates to the specific cattle Cox discussed with Lyon in Jack County.

Upon receipt of the invoice, Riley Livestock wrote a check dated March 31, 2015 in the amount of $798,319.08.[2] This check was made payable to Plaintiff. The cattle

---

[1] See Exhibit A

[2] See Exhibit B

R058

were to be delivered to Francis Farms for feeding and delivery for sale 60-90 days later. However, when it came time to sell the 554 head of cattle, Plaintiff failed to deliver the 554 head of cattle to Intervenors.

In June 2015, shortly before time for the cattle to be sold, Plaintiff informed Jeff Cox that there was "a problem" with Lyon. After receiving that call, Jeff Cox travelled to Texas to speak with Lyon. When he arrived, Cox learned that other representatives of Plaintiff (Jason O'Connell and Tim Correll) had been present on the Lyon property. Plaintiff seized approximately 892 head of cattle from Lyon Farms, and represented to Cox that the seized cattle would be used to try to "make whole" both Cox and Plaintiff.

Later in 2015, 41 head of cattle were delivered to Intervenors' business location in Nebraska. These were represented to be from the seized cattle. Intervenors liquidated the 41 head and had checks for the proceeds made out jointly to Midwestern Cattle and Northwest Cattle Feeders.[3] Plaintiff has not disclosed what happened with the remaining seized cattle despite requests by Intervenors for this information. Upon information and belief, Plaintiff has liquidated some or all of the seized cattle and retained the proceeds from those sales for its use to the exclusion of Intervenors.

## Procedural Background

Without providing any notice to Intervenors, Plaintiff filed the present lawsuit in July 2015. The Lyon scheme is also under current investigation by state and federal agencies. Intervenors learned of this lawsuit through hearing about the state and federal criminal investigations.

As victims of the scheme, Intervenors filed their Petition in Intervention on November 24, 2015. Intervenors assert claims against both Plaintiff and Defendants.

---

[3] See Exhibit C

INTERVENORS RESPONSE TO MOTION TO STRIKE – PAGE 3

R059

Plaintiff filed a Motion to Strike on December 18, 2015. Defendants filed a response in opposition to Plaintiff's Motion to Strike on February 4, 2016.

Since November, Intervenors have participated in discovery and depositions taken in this case. The case is set for Second Scheduling Conference on May 16, 2016.

### Argument & Authorities

TRCP 60 provides that a "party may intervene, subject to being stricken out by the court for sufficient cause on the motion of any party." The party opposing intervention "has the burden to challenge it by a motion to strike." *Guaranty Federal Savings Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). Here, only Plaintiff seeks to strike the intervention. Defendants do not oppose intervention. In response to such a motion, an intervenor is entitled to present the basis for intervening at a hearing. *Prototype Machine Co. v. Boulware*, 292 S.W.3d 169, 172 (Tex.App.—San Antonio 2009, no pet.).

Under TRCP 60, "a person or entity has the right to intervene if the intervenor could have brought the same action, ***or any part thereof***, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof." *Guaranty Federal Savings Bank*, 793 S.W.2d at 657 (emphasis added). "The interest asserted by the intervenor may be legal or equitable." *Id*. The trial court "should determine the party's justiciable interest on the basis of the sufficiency of the petition in intervention." *Caprock Investments Corp. v. F.D.I.C.*, 17 S.W.3d 707, 711 (Tex.App.—Eastland 2000, pet. denied); *Potash Corp. v. Mancias*, 942 S.W.2d 61, 64 (Tex.App.—Corpus Christi 1997, orig. proc.).

The trial court has "***broad discretion***" to determine whether intervention is proper. *Guaranty Federal Savings Bank*, 793 S.W.2d at 657 (emphasis added).

R060

However, "it is an abuse of discretion to strike a plea in intervention if (1) the intervenor meets the above test, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest." *Id. See also In re: Lumbermen's Mutual Cas. Co.*, 184 S.W.3d 718 (Tex. 2006)(finding that trial court abused discretion in denying intervention by insurer to appeal underlying judgment).

In *Guaranty Federal Savings Bank*, the trial court struck the petition in intervention filed by a bank customer (Petrolife) concerning whether a teller check should or should not be paid by a bank. The Supreme Court found that "[j]udicial economy requires that Petrolife intervene and participate in the trial in order to avoid a multiplicity of lengthy lawsuits." *Guaranty Federal Savings Bank*, 793 S.W.2d at 658. For this reason, the Supreme Court found that striking the petition in intervention was an abuse of discretion. *Id.*

That is the same issue in the present case. Plaintiff seeks damages related to a "deplorable" scheme of Defendants to commit cattle fraud. Intervenors are victims of that same scheme. In fact, Intervenors bought the cattle from Plaintiff based on a sale produced by Plaintiff's agent, Tony Lyon (who is also one of the Defendants). Intervenors paid the money for the cattle to Plaintiff, who in turn issued a check to Owen Lyon (who is also one of the Defendants).[4]

The witnesses and issues are the same. The same issues to be decided by the jury as to Plaintiff's claims will be decided by the jury as to Intervenors' claims.[5] The

---

[4] See Exhibit D (Exhibit 6 to Jeff Cox deposition)

[5] The issue of whether Lyon was Plaintiff's agent is also raised in both cases. Plaintiff seeks to recover for breach of fiduciary duty based on its "business relationship" with Lyon. That relationship can only be one of agency. Similarly, Intervenors seek to hold Plaintiff liable for Lyon's conduct under agency principles.

R061

procedural posture of the case is no different than if Intervenors had originally filed suit against Plaintiff and Defendants, and Plaintiff then asserted a cross-claim against Defendants. As such, there is no "excessive multiplication of the issues" raised by intervention in this case.

For the same reasons, Intervenors have a justiciable interest in the present case. Intervenors could have brought the same action as the sole plaintiff against Plaintiff and Defendants. In part, Plaintiff seeks damages from Lyon for cattle fraud. Intervenor seeks the same relief based on the same conduct. As such, Intervenors "could have brought the same action, *or any part thereof,* in [their] own name." *Guaranty Federal Savings Bank*, 793 S.W.2d at 657. *See Acton Corp. v. Sabinske*, 1995 WL 479671 (Tex.App.—Dallas 1995, pet. denied).[6]

In *Acton Corp.*, the Dallas Court of Appeals reversed a jury's verdict based on fraud, and remanded the case for a new trial with instructions to reinstate the intervention by NDC that the trial court had denied. *Id.* at *1. The Dallas Court of Appeals explained its reasoning as follows:

> It is undisputed that NDC was entitled, in its own right, to assert the causes of action contained in its plea in intervention. NDC's request for declaratory relief appears to be simple. Certainly, nothing in the record shows it would have appreciably affected the issues to be tried or the length of the trial. NDC's intervention would not have affected the complexity of the case. The interests of the Sabinskes, Acton, and NDC were interwoven. Disposition of the case could reasonably impair or impede NDC's ability to protect any interest it might have in the subject

---

Severing the claims creates the risk of inconsistent findings based on Plaintiff wanting to take the position on its claims that Lyon was its agent, but with respect to Intervenors' claims seeking to deny any agency relationship.

[6] *See also Law Offices of Windle Turley v. Ghiasinejad*, 109 S.W.3d 68, 71 (Tex.App.—Fort Worth 2003, no pet.)(finding that discharged law firm had justiciable interest in former client's personal injury lawsuit based on contingent fee agreement); *Consumers County Mut. Ins. Co. v. Mendoza*, 2007 WL 687157 (Tex.App.—Corpus Christi 2007, no pet.)(finding that insurer had justiciable interest to intervene in proceedings to protect assets subject to turnover order).

R062

litigation. Thus, NDC's participation was almost essential to NDC's protecting its interests.[7]

The same rationale applies here. Like NDC, there is no doubt Intervenors are "entitled, in its own right, to assert the causes of action contained in its plea in intervention." *Acton Corp.* at *9. Similarly, as it relates to the Defendants, the interests of Intervenors and Plaintiff are "interwoven" and the claims asserted by each against Defendants are similar and arise from the same "deplorable" cattle fraud scheme. *Id.* Likewise, as set forth below, [d]isposition of the case could reasonable impair or impede [Intervenors'] ability to protect any interest it might have in the subject litigation." *Id.*

Lastly, intervention is necessary to protect Intervenors' interest. Approximately 892 head of cattle were seized by Plaintiff from Defendants upon revelations of the fraudulent conduct. Some or all of the 554 head may or may not have been part of the seized cattle. Plaintiff caused delivery of 41 cows to Intervenors' Nebraska location for care and maintenance following seizure.

Intervenors have received proceeds from the sale of such cattle. Intervenors had checks for the proceeds made payable to Plaintiff and Intervenors based on a conversation between Jeff Cox (representative for Intervenors) and Jason O'Connell (representative for Plaintiff) that the cattle would be used to "make whole" both Plaintiff and Intervenors. However, after Plaintiff's representatives were interviewed by FBI agents concerning this scheme, Plaintiff ceased communications with Intervenors, and have provided no information concerning the whereabouts or sale of the seized cattle.

Instead, Plaintiff apparently retained the proceeds from these sales, and now (after making exclusive use of those proceeds) seeks to pursue a judgment against

---

[7] *Acton Corp.*, 1995 WL 479671 at *9

R063

Defendants. Intervention is "almost essential to effectively protect the intervenor's interest" in recovering the cattle or sale proceeds for the cattle Intervenors paid for in March 2015. *Guaranty Federal Savings Bank*, 793 S.W.2d at 658. *Cf. Duke v. Wilson*, 900 S.W.2d 881, 885 (Tex.App.—El Paso 1995, pet. denied)(permitting workers' compensation insurer to intervene in employee's third-party liability lawsuit "as it prevents the payment of the judgment in full to [employee] prior to [insurer's] recoupment of its subrogation interest); *State Farm Mut. Auto Ins. Co. v. Perkins*, 216 S.W.3d 396, 403 (Tex.App.—Eastland 2006, no pet.)(citing *Duke* and finding abuse of discretion in striking intervention); *Texas Supply Center, Inc. v. Daon Corp.*, 641 S.W.2d 335, 337 (Tex.App.—Dallas 1982)(finding abuse of discretion in striking intervention where intervenor had claim to funds at issue). The issue of whether the interest need protecting is judged by the circumstances that exist at the time of the hearing. *In re: R.L.A.*, 2009 WL 885881 (Tex.App.—Fort Worth 2009, orig. proc.).

Plaintiff's reliance on *In re: Union Carbide Corp.*, 273 S.W.3d 152 (Tex. 2008) is misplaced. In that case, the intervenors made "no claim that their controversy will be affected or resolved by resolution of the Moffett case." *Id.* at 155. Moreover, that case involved two separate and distinct personal injury cases that involved different diseases that occurred from exposure to different chemicals over differing time period. *Id.* at 154.

Here, Intervenors seek damages arising from the exact same "deplorable" scheme that Plaintiff alleges against Defendants. That scheme occurred during the same time period and involved the same parties. Both even include the fictitious George's Cattle Company as the invented party to the sale. Further, any judgment obtained by Plaintiff against Defendants will certainly affect resolution of Intervenors' claims – especially

R064

given the actions of Plaintiff in seizing pre-trial approximately 892 head of cattle from Defendants and liquidating those cattle to the exclusion of Intervenors.

For the same reasons, Plaintiff is not entitled to severance. A severance is only appropriate when the "severed claim is not so interwoven with the remaining action that they involve the same facts and issues." *Guaranty Federal Savings Bank*, 793 S.W.2d at 658. "Severance of claims under the Texas Rules of Civil Procedure rests within the sound discretion of the trial court." *In re: Liu*, 290 S.W.3d 515, 520 (Tex.App.— Texarkana 2009, orig. proc.). As set forth above, Intervenors' claims arise from the same scheme, involve the same parties, and substantially the same claims. Clearly, the claims of Intervenors and Plaintiff involve the "same facts and issues" so as to make severance improper.

### Conclusion

For the foregoing reasons, Intervenors respectfully request that Plaintiff's Motion to Strike and Alternative Motion to Sever be DENIED.

Respectfully submitted,

SIMPSON, BOYD, POWERS & WILLIAMSON

Derrick S. Boyd
State Bar No. 00790350
Kristy P. Campbell
State Bar No. 24041684
P.O. Box 957
105 N. State Street, Suite B
Decatur, Texas 76234
Telephone No. (940) 627-8308
Facsimile No. (940) 627-8092

BY: _____

ATTORNEYS FOR INTERVENORS

R065

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that a true and correct copy of Intervenor's Petition in Intervention was delivered via fax and/or certified mail return receipt requested to all counsel of record on this 26th day of February, 2016.

R066

# Exhibit A

R067

**Midwestern Cattle Marketing, LLC**
P.O. Box 710
Sidney, NE 69162
Phone 308.249 0079
Fax 308.254 4731

# INVOICE

INVOICE #DEALER-FEEDER CATTLE
DATE 3/31/2015

TO:
Northwest Cattle Feeders
675 Rd West F South
Brule, Ne 69127

## PAYMENT IS DUE WITHIN 24 HOURS OF RECEIPT OF THIS INVOICE

| OPTION #1: WIRE FUNDS | OPTION #2: FEDEX FUNDS (OVERNIGHT) |
|---|---|
| Points West Community Bank | Points West Community Bank |
| 809 Illinois St | 809 Illinois St |
| PO Box 157 | PO Box 157 |
| Sidney, NE 69162 | Sidney, NE 69162 |
| | |
| Midwestern Cattle Marketing, LLC | Midwestern Cattle Marketing, LLC |
| Custodial Account – Dealer | Custodial Account – Dealer |
| ABA #104101627 | ABA #104101627 |
| Account #10111276 | Account #10111276 |

| ITEM | DESCRIPTION | HEAD COUNT | GROSS WEIGHT | NET WEIGHT | PRICE/CWT | AMOUNT |
|---|---|---|---|---|---|---|
| | Steers Sold from Perrin, TX | 554 head | 362,870 | 355,613 642# Ave. | $224.50/cwt | $798,351.19 |
| | | | | | TOTAL | $798,351.19 |

As an affidavit is deemed by USDA as an official record of Country of Origin, I attest through first-hand knowledge, normal business records, or producer affidavit(s) that all livestock referenced by this document or other communications specific to the transaction and transferred are of US origin (born & raised). *Midwestern Cattle Marketing, LLC*

Make all checks payable to **Midwestern Cattle Marketing, LLC**

## Thank you for your business!

R068

# Exhibit B

R069

The Front Image: Print



The Back Image: Print



R070

Exhibit C

R071

DWAYNE MAYS
Owner/Manager
Res. 308-284-2069

SCOTT VAN WINKLE
Owner/Manager
Res. 308-874-2813

SETTLEMENT

# Ogallala
## LIVESTOCK AUCTION MARKET, INC.
P.O. Box 30
Ogallala, Nebraska 69153
308-284-2071

CARLA DE KAY
Office Manager
308-284-2071

DATE Feb 4, 2016

SELL-NO: 279          027517

SOLD FOR   JEFF COX          221 S JEFFERSON AVE      NORTH PLATTE, NE   6910

| Head | Description | | | Buyer | Avg-wt | Weight | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | BLK | COW | SL | 8-3 | | 1265 | 72.50C | 917.13 |
| 1 | BLK | HFRT | FE | 195-51 | | 1515 | 76.00C | 1,151.40 |
| 1 | BLK | COW | SL | 8 | | 1190 | 83.50C | 993.65 |
| 1 | BLK | COW | SL | 8-3 | | 1450 | 75.00C | 1,087.50 |
| 1 | BLK | HFRT | FE | 46-9 | | 1320 | 80.00C | 1,056.00 |
| 1 | BLK | HFRT | FE | 225 | | 810 | 91.00C | 737.10 |
| 1 | BLK | HFRT | FE | 195-51 | | 1760 | 77.00C | 1,355.20 |
| 1 | BLK | HFRT | FE | 46-3 | | 1085 | 75.00C | 813.75 |
| 1 | BLK | HFRT | SL | 195 | | 1065 | 79.00C | 841.35 |
| 2 | BLK | COW | BR | 32-5 | 1320 | 2640 | 1,300.00H | 2,600.00 |

5-6 YR OLD FALL CLVR

| Averages: | Head | Avg-wt | Avg-$-cwt | Avg-$-hd |
|---|---|---|---|---|
| Bred Cow | 2 | 1320 | 98.48 | 1,300.00 |
| Cows | 3 | 1302 | 76.78 | 999.43 |
| Hfrettes | 6 | 1259 | 78.82 | 992.47 |

| 11 | | | 14100 | $11,553.08 |

### DEDUCTIONS

| | | | |
|---|---|---|---|
| COMMISSION | 231.06 | YARDAGE | 39.90 |
| BEEF COUNCIL | 11.00 | HEALTH | 4.18 |
| INSURANCE | 16.17 | BRAND INSP. | 11.00 |
| PREG MO TATT | 14.00 | PREG TEST | 33.75 |
| HAY | 132.00 | | |

TOTAL DEDUCTIONS     $493.06

PLEASE KEEP THIS RECEIPT FOR YOUR RECORDS!!!!!!

NET PROCEEDS     $11,060.02

PLEASE DETACH THIS PORTION BEFORE DEPOSITING CHECK

# Ogallala
Livestock Auction Market, Inc.
Custodial Account For
Shippers' Proceeds

PAY TO THE ORDER OF

76-1395
1041

ADAMS BANK & TRUST CO.
OGALLALA, NEBRASKA

| DATE | CHECK NO. | AMOUNT |
|---|---|---|
| Feb 4, 2016 | 027517 | $****11,060.02 |

*******************Eleven Thousand Sixty and 02/100 Dollars

OGALLALA LIVESTOCK AUCTION MARKET, INC.
CUSTODIAL ACCOUNT FOR SHIPPERS' PROCEEDS
VOID AFTER 180 DAYS

NORTHWEST CATTLE FEEDERS
& MIDWESTERN CATTLE MKTG
675 ROAD WEST F SOUTH
BRULE, NE   69127

SIGNATURE _Heather Petersen Sec_

NCF000020

⑆027517⑆ ⑈104113958⑈ ⑇0000 066 8⑇

R072

SETTLEMENT

**Ogallala**
LIVESTOCK AUCTION
MARKET, INC.
P.O. Box 30
Ogallala, Nebraska 69153
308-284-2071

**DWAYNE MAYS**
Owner/Manager
Res. 308-284-2069

**SCOTT VAN WINKLE**
Owner/Manager
Res. 308-874-2813

**CARLA DE KAY**
Office Manager
308-284-2071

DATE Feb 4, 2016          SELL-NO: 276          027516

SOLD FOR   JEFF COX        221 S JEFFERSON AVE     NORTH PLATTE, NE  6910

| Head | Description | Buyer | Avg-wt | Weight | Price | Amount |
|------|-------------|-------|--------|--------|-------|--------|
| 32 | BLK  C&C  BR | 205-8 | 779 | 24920 | 2,375.00H | 38,000.00 |
| | 3-6 YR OLD RUNNING BACK WITH ANGUS BULL | | | | | |
| 6 | BBWF  C&C  BR | 130-1 | 588 | 3530 | 1,675.00H | 5,025.00 |
| | 3-6 YR OLD RUNNING BACK WITH BULL | | | | | |
| 6 | BLK  C&C  BR | 205-8 | 973 | 5835 | 1,825.00H | 5,475.00 |
| | 5- SOLID MOUTH RUNNING BACK WITH BULL | | | | | |
| 2 | BLK  C&C  BR | 130-9 | 715 | 1430 | 1,100.00H | 1,100.00 |
| | 5-6 YR OLD RUNNING WITH BULL CALF HAS CROOKED NECK | | | | | |
| 2 | BLK  C&C  BR | 202 | 660 | 1320 | 1,325.00H | 1,325.00 |
| | SOLID MOUTH RUNNING BACK WITH BULL | | | | | |
| 2 | BLK  C&C  BR | 202 | 613 | 1225 | 1,075.00H | 1,075.00 |
| | 3-4 YR OLD RUNNING WITH BULL CALF IS AS IS | | | | | |

| Averages: | Head | Avg-wt | Avg-$-cwt | Avg-$-hd | | |
|-----------|------|--------|-----------|----------|--|--|
| Cow-cf pr. | 25 | 1530 | 135.91 | 2,080.00 | | |
| 50 | | | | | 38260 | $52,000.00 |

**DEDUCTIONS**

| | | | |
|--|--|--|--|
| COMMISSION | 1,000.00 | YARDAGE | 175.00 |
| BEEF COUNCIL | 50.00 | HEALTH | 19.00 |
| INSURANCE | 72.82 | BRAND INSP. | 50.00 |
| MO TATTOO | 125.00 | HAY | 300.00 |

TOTAL DEDUCTIONS  $1,791.82

PLEASE KEEP THIS RECEIPT FOR YOUR RECORDS!!!!!!

NET PROCEEDS  $50,208.18

PLEASE DETACH THIS PORTION BEFORE DEPOSITING CHECK

**Ogallala**
Livestock Auction Market, Inc.
Custodial Account For
Shippers' Proceeds

PAY TO THE ORDER OF

76-1995
1041

ADAMS BANK & TRUST CO.
OGALLALA, NEBRASKA

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| Feb 4, 2016 | 027516 | $****50,208.18 |

*******Fifty Thousand Two Hundred Eight and 18/100 Dollars

OGALLALA LIVESTOCK AUCTION MARKET, INC.
CUSTODIAL ACCOUNT FOR SHIPPERS' PROCEEDS
VOID AFTER 180 DAYS

NORTHWEST CATTLE FEEDERS
& MIDWESTERN CATTLE MKTG
675 ROAD WEST F SOUTH
BRULE, NE  69127

SIGNATURE  _Heather Petersen Sec_

NCF000021

⑈027516⑈ ⑆104113958⑈ ⑈0000 066 8⑈

R073

# Exhibit D

R074

**Midwestern Cattle Marketing, LLC**
P.O. Box 710
Sidney, NE 69162
Phone 308.249.0079
Fax 308.254.4731

Ex 6

# INVOICE

INVOICE #DEALER-FEEDER CATTLE
DATE: 3/31/2015

TO:
Northwest Cattle Feeders
675 Rd West F South
Brule, Ne 69127

## PAYMENT IS DUE WITHIN 24 HOURS OF RECEIPT OF THIS INVOICE

| OPTION #1: WIRE FUNDS | OPTION #2: FEDEX FUNDS (OVERNIGHT) |
|---|---|
| Points West Community Bank | Points West Community Bank |
| 809 Illinois St | 809 Illinois St |
| PO Box 157 | PO Box 157 |
| Sidney, NE 69162 | Sidney, NE 69162 |
| | |
| Midwestern Cattle Marketing, LLC | Midwestern Cattle Marketing, LLC |
| Custodial Account – Dealer | Custodial Account – Dealer |
| ABA #104101627 | ABA #104101627 |
| Account #10111276 | Account #10111276 |

| ITEM | DESCRIPTION | HEAD COUNT | GROSS WEIGHT | NET WEIGHT | PRICE/CWT | AMOUNT |
|---|---|---|---|---|---|---|
| | Steers Sold from Perrin, TX | 554 head | 362,870 | 355,613 642# Ave. | $224.50/cwt | $798,351.19 |
| | | | | | TOTAL | $798,351.19 |

As an affidavit is deemed by USDA as an official record of Country of Origin, I attest through first-hand knowledge, normal business records, or producer affidavit(s) that all livestock referenced by this document or other communications specific to the transaction and transferred are of US origin (born & raised). *Midwestern Cattle Marketing, LLC*

Make all checks payable to **Midwestern Cattle Marketing, LLC**

## Thank you for your business!

R075

554          362870 Gross
Steer        355613 Pay

              2.23
—————————————————————
$ 793,016.09

          1108.00 Beef
—————————————————————
$ 791,908.09

Lyon Farms / Owen Lyon

CK# 1000763


Bill Cattle to Jeff Cox

554 strs     362,870
             355,613      142#
             224.50
          ——————————
          $ 798,351.19

                    profit — 5335.00
                    Jeff Cox — 1778.07
                    Jason — 3003.03
                    Tom — 554.10

R076



R077

POINTSWEST
Community Bank

All items are received by this bank subject to the conditions and terms of this bank's collection agreement. Funds from deposits may not be available for immediate withdrawal.

Riley Livestock, INC

798,3m08

| CURRENCY | | |
|---|---|---|
| COIN | | |

Received by _____ LESS CASH

DATE 4-2-15   Ttal 798,3m08

NAME: Midwestern Cattle Marketing

ACCT. #: 101112 76   BY NP

101112761  009  0079831908

PLEASE LIST AND FIGURE ON THIS △ FIGURE ON FRONT

TOTAL OF ADDITIONAL CHECKS

CHECKS

DOLLARS

CENTS

R078

Close window

**Get Rates & Transit Times**

Print

| Details | | | | | Help |
|---|---|---|---|---|---|
| | | | | | Amounts are shown in USD |
| Services delivery with date/time | FedEx Priority Overnight° 12:00 Thu Apr 02, 2015 | FedEx Standard Overnight° 16:30 Thu Apr 02, 2015 | FedEx 2Day AM° 12:00 Fri Apr 03, 2015 | FedEx 2Day° 16:30 Fri Apr 03, 2015 | FedEx Express Saver° 16:30 Mon Apr 06, 2015 |
| Base Rate | 32.55 | 31.35 | 19.31 | 17.55 | 14.10 |
| Additional charges (+) | | | | | |
| +Fuel surcharge | 0.47 | 0.46 | 0.30 | 0.27 | 0.23 |
| +DAS Comm | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 |
| Discounts (-) | | | | | |
| -Bonus discount | 3.26 | 3.14 | 1.93 | 1.76 | 1.41 |
| Total | 32.11 | 31.02 | 20.03 | 18.41 | 15.27 |

More information about your results:

- Rates shown here may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide for details.
- For more accurate rate and transit time quotes, view this Courtesy Rate Quote after selecting any additional shipment options.

Print

R079

CAUSE NO. 15-07-061

| MIDWESTERN CATTLE | § | IN THE DISTRICT COURT |
| MARKETING, LLC | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| TONY E. LYON d/b/a LYON FARMS, | § | |
| OWEN LYON and MONNA LYON | § | |
| | § | JACK COUNTY, TEXAS |
| Defendant | § | |
| | § | |
| and | § | |
| | § | |
| NORTHWEST CATTLE FEEDERS, | § | |
| L.L.C. and RILEY LIVESTOCK, INC. | § | |
| | § | |
| Intervenors | § | 271ST JUDICIAL DISTRICT |

## ORDER DENYING PLAINTIFF'S MOTION TO STRIKE PETITION IN INTERVENTION, AND ALTERNATIVE MOTION TO SEVER

The Court heard Plaintiff's Motion to Strike Petition in Intervention, and Alternative Motion to Sever on March 4, 2016. After the hearing, the Court took the matter under further consideration. After review of the Motion, the Response, the evidence offered at the hearing, and the arguments of counsel, the Court concludes that the Motion should be denied.

Therefore, it is ordered that Plaintiff's Motion to Strike Petition in Intervention, and Alternative Motion to Sever is hereby DENIED.

**FILED**
_10:45_ A.M. _____ P.M.

MAR 21 2016

TRACIE PIPPIN DIST. CLERK
JACK COUNTY, TEXAS
BY_____ DEPUTY

_____
The Honorable Judge John H. Fostel
Judge Presiding

R080

*REPORTER'S RECORD*
VOLUME 1 OF 1 VOLUME(S)
TRIAL COURT CAUSE NO. 15-07-061

MIDWESTERN CATTLE MARKETING,     §          IN THE DISTRICT COURT
LLC,                             §
                                 §
                 Plaintiff       §
VS.                              §
                                 §
TONY E. LYON d/b/a LYON FARMS,   §
OWEN LYON and MONNA LYON,        §
                                 §          OF JACK COUNTY, TEXAS
                 Defendants      §
                                 §
AND                              §
                                 §
NORTHWEST CATTLE FEEDERS, LLC,   §
and RILEY LIVESTOCK, INC.,       §
                                 §
                 Intervenors     §          271ST JUDICIAL DISTRICT

************************************************************

*MOTION TO STRIKE INTERVENTION/SEVER*

************************************************************

On the 4th day of March, 2016, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable John Fostel, Judge Presiding, held in Jacksboro, Jack County, Texas.

Proceedings reported by machine shorthand utilizing computer-aided translation.

A P P E A R A N C E S

MR. CHRISTOPHER B. TROWBRIDGE
SBOT NO. 24008182
BELL, NUNNALLY & MARTIN, LLP
3232 MCKINNEY AVENUE
SUITE 1400
DALLAS, TEXAS 75204-7422
TELEPHONE:   214.740.1400

- AND -

MR. TODD PARKS
SBOT NO. 15526520
WALTERS, BALIDO & CRAIN
400 EAST MAIN STREET
DECATUR, TEXAS 76234
TELEPHONE:   940.626.8254
ATTORNEYS FOR PLAINTIFF

MR. DERRICK S. BOYD
SBOT NO. 00790350
SIMPSON, BOYD & POWERS
P.O. BOX 957
DECATUR, TEXAS 76234
TELEPHONE:   940.627.8308
ATTORNEY FOR INTERVENORS

R082

*CHRONOLOGICAL INDEX*

*March 4, 2016*                                                    Page

Case Called....................................... 4

Plaintiff's Motion to Strike Intervention/Sever.......... 4

Intervenor's Response.................................. 7

Plaintiff's Rebuttal................................. 10

End of Proceedings.................................. 11

Reporter's Certificate.................................. 12

*WITNESS INDEX*

NONE

*EXHIBIT INDEX*

INTERVENOR'S

| NO. | DESCRIPTION | OFFERED | ADMITTED |
|-----|-------------|---------|----------|
| A | MCM Invoice | 11 | 11 |
| B | Riley Livestock, Inc., Check | 11 | 11 |
| C | Receipt of Sale | 11 | 11 |
| D | MCM Invoice | 11 | 11 |

*P R O C E E D I N G S*

March 4, 2016

(Open court, attorneys present)

THE COURT: 15-07-061. If y'all would give announcements for the record, please. You may proceed, Counsel.

MR. TROWBRIDGE: Chris Trowbridge and Todd Parks here for Midwestern Cattle, Plaintiff.

MR. BOYD: Your Honor, Derrick Boyd for the Intervenor.

THE COURT: You may proceed.

MR. TROWBRIDGE: Thank you, your Honor.

This is Plaintiff Midwestern Cattle's motion to strike the intervention of two intervenors. As you may recall, Midwestern Cattle filed this lawsuit in July of 2015 against Tony Lyon and his parents. Our petition is in connection with a bounced check for $5 million that was written in June of 2015 and then four checks that were written by the Lyon family without our authorization on Midwestern Cattle's checkbook. Those checks totaled 3.7 million. So there's two transactions, June 25th and June 26th.

Four months after we filed our suit the Intervenors filed a petition for intervention. Now, their damages stem from a cattle transaction that took place back in March and April of 2013, and they're seeking to recovery

R084

$800,000 from my client and from the Defendants we sued. They're also seeking a constructive trust on funds stemming from cattle that my client seized later in the year in July.

Intervenor's suit involves different relief. They're seeking different damages and different claims. Under those facts, intervention is not proper. It will cause my trial, the Midwestern Cattle, to be longer. It will be less efficient for this court. For those reasons, it should be stricken by the Court.

The case that I handed you, the Texas Supreme Court case Union Carbide, outlines three grounds for a proper intervention, and that's on the demonstrative I handed you. First, Intervenors have to show a justiciable interest in the relief sought by the Plaintiff. Texas Supreme Court says that -- that condition is paramount. Next, the intervention must avoid a multiplication of issues. And third, the intervention must be essential to protect Intervenor's claims. None of those requirements exist here.

First, with respect to justiciability, the Supreme Court says the justiciable interest requirement protects pending cases from having interlopers disrupt the proceedings. That's exactly what's happening here before you, your Honor. Intervenors are interlopers. They don't seek any of the relief that Plaintiffs are seeking. They were not involved in the $5 million bounced check. They were not

R085

involved in the $3.7 million checks. They're seeking new and different relief, that $800,000 for 554 head of cattle and the constructive trust. Those are new and different transactions from what Midwestern Cattle is suing on.

Now, the standard and the test that you have to conduct pursuant to the Texas Supreme Court says to constitute a justiciable interest the intervenor's interest must be such that if the original action had never been commenced and he had first brought it as a sole plaintiff, he would have been entitled to recover in his own name at least a part of the relief sought in the original suit.

They have no right to our -- the relief we're seeking on the $5 million check, and they have no right to the $3.7 million in unauthorized checks. What they're trying to do is simply piggy back on MCM's suit, Midwestern Cattle's suit. But their forced participation in this lawsuit before you will complicate the case for you, will complicate the case for the jury, it will multiply the issues, it'll extend the days necessary to try the Midwestern case.

We've added two new parties, new claims, a new transaction, new fact issues, new misrepresentations forming the basis for their fraud claim, and the Court says you need to look at the petition and intervention and compare it to the original petition that was filed. I have copies of that for you. I can move to have them admitted as exhibits, or I'd ask

that you take judicial notice of them --

*THE COURT:* I'll take judicial notice of it.

*MR. TROWBRIDGE:* Thank you.

And to briefly summarize the last two issues, of course you see how it's multiplying the issues. It's not going to be efficient for this court. One might think, oh, well, let's just have one trial instead of two. Well, we might have one jury hearing it, but it would be combining two trials into one. It will take just as long as the two trials.

Finally, it's not essential to protect their claim. Even if we win on our bounced check, the $5 million and then the unauthorized checks, that will not preclude Intervenor's claims, and nothing prevents Intervenors from filing their own separate lawsuit.

So for those reasons, we ask that you strike Intervenor's petition in our motion.

*THE COURT:* Response.

*MR. BOYD:* Your Honor, very briefly, the intervention is not going to complicate the case. What's going to complicate is Midwestern's strategy in this case. What they have sued the Lyons over is saying you are our agent, you stole this money from us, you did not have authority to do that, and they sued the Lyons for breach of fiduciary duty.

We have come in and said, exactly, we agree. He was your agent. You were the one that invoiced us for the

cattle. We wrote you the check, Midwestern, and we never got the cattle. The only issue that it adds is agency. What they're wanting to do is take a position in the Lyons' case that he was their agent but then have a separate case so they can deny agency in our case. It's not -- the only issue it's going to add is the agency question. All the other issues overlap, whether the Lyons committed fraud, whether Midwestern delivered the cattle. All of that is interwoven. And that's the Acton (phonetic) case that we cite to the Court, where there was a fraud case, it went up on appeal, that they reversed the jury's finding on fraud and sending it back down, the Court of Appeals instructed that the Intervenors should have been allowed to intervene in that case because their interests were interwoven.

It benefits the Court because we do have one trial instead of two over these same issues. The other parties, the Lyons, are not here today, but they have filed briefs in opposition of the motion to strike. They don't want to have two separate trials over these issues.

And the Union Carbide case that they rely on is distinguishable for the very reason that we point out in our brief. It says in that case there was no claim that the claims of the intervenors would be affected by the underlying lawsuit. Here, what happened was when they found out about what their agent had done, they called us up and said, hey, we've got a

problem. We came down to Texas to meet with them. They were already here. They seized 892 head of cattle from the Lyons. We were told that was going to be used to kind of pay off everybody who had been a victim of this scheme. Next thing we find out, they get 41 head shipped to us, which were far short of the 554 that we were supposed to get. They converted the other -- we don't know what happened to it still, but that cattle was seized from the Defendants who are the same people we're both suing trying get the recovery. That's a joint interest. And for the reasons we stated in the brief, that satisfies the justiciable interest issue.

The multiplication issues we talked about. There's only one issue that's going to be added, and that's the agency. And it would be better for the Court to address that in one case rather than have to address it twice in two separate cases.

So for these reasons, we believe Union Carbide is distinguishable. That was a case where there was a plant explosion -- not explosion. There was one plaintiff that worked at a particular plant over a time period that was claiming exposure to one substance. Someone who had been exposed to a different substance by the same Defendant at a different plant over a different time period was trying to come in and join that lawsuit because they had the venue that they liked.

Here, there's no forum shopping. If the intervention is struck, we turn around and file another lawsuit tomorrow in Jack County. They're subject to venue here.

So the Union Carbide case is distinguishable. We believe that this case falls under Acton where intervention is proper, and we would ask that the Court deny the motion to strike the intervention.

MR. TROWBRIDGE: Briefly, your Honor, Acton is a Dallas Court of Appeals case; it's not binding on you. The Texas Supreme Court case is binding on you.

That case says that once a party to the pending suit moves to strike the intervention, the intervenors have a burden to show a justiciable interest in the pending suit. They can't meet that burden, and they haven't met that burden in front of you. They've put forth no evidence demonstrating that they're seeking to recover on the damages being sought by Midwestern Cattle. They are the exact type of interlopers that the Texas Supreme Court says you shouldn't allow into a suit. They're going to complicate Midwestern Cattle's case.

Midwestern Cattle has a simple case. They're adding fraud claims, constructive trust, conspiracy claims alleging that Midwestern Cattle conspired with the Lyons. It will -- it could very well triple the time of my trial, but it certainly will double it. It will not be efficient. And under the Texas Supreme Court mandate, they should not be allowed in

R090

this case, and we ask that you strike the intervention.

MR. BOYD: Just briefly for the record, we did offer Exhibits A through D. It was attached to our motion. We would offer those so that they're before the Court.

THE COURT: Any objection to that?

MR. TROWBRIDGE: Let me look at those real quick.

No objection to those exhibits, but they do nothing to show that they have an interest in the damages we're seeking.

THE COURT: All right. They're admitted.

Just out of curiosity, how many other potential intervenors are there out there?

MR. TROWBRIDGE: I didn't even expect them to intervene, so I don't think --

THE COURT: You might have some idea. I mean as I recall from the prior hearings in this, there were several --

MR. TROWBRIDGE: (Overlapping) Oh. We filed suits against other people as separate suits, but I don't anticipate anybody else intervening in this case.

THE COURT: All right. Just curious.

Gentlemen, I'm going to review the material y'all have submitted on the cases, and I will get you an opinion shortly.

(Proceedings adjourned)

STATE OF TEXAS          )

COUNTY OF JACK          )

I, DENISE HILL, Official Court Reporter in and for the 271st Judicial District Court of Wise and Jack Counties, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $200.00 and was paid/will be paid by Bell, Nunnally & Martin.

WITNESS MY OFFICIAL HAND this the 31st day of March, 2016.

/s/Denise Hill
_____
DENISE HILL, CSR No. 4381
Expiration Date:  12/31/16
Official Court Reporter
271st Judicial District Court
Wise-Jack Counties, Texas
denise.hill@co.wise.tx.us

# Exhibit A

R093

# Midwestern Cattle Marketing, LLC

P.O Box 710
Sidney, NE 69162
Phone 308.249 0079
Fax 308.254 4731

# INVOICE

INVOICE # DEALER-FEEDER CATTLE
DATE 3/31/2015

TO:
Northwest Cattle Feeders
675 Rd West F South
Brule, Ne 69127

## PAYMENT IS DUE WITHIN 24 HOURS OF RECEIPT OF THIS INVOICE

| OPTION #1: WIRE FUNDS | OPTION #2: FEDEX FUNDS (OVERNIGHT) |
|---|---|
| Points West Community Bank | Points West Community Bank |
| 809 Illinois St | 809 Illinois St |
| PO Box 157 | PO Box 157 |
| Sidney, NE 69162 | Sidney, NE 69162 |
| | |
| Midwestern Cattle Marketing, LLC | Midwestern Cattle Marketing, LLC |
| Custodial Account – Dealer | Custodial Account – Dealer |
| ABA #104101627 | ABA #104101627 |
| Account #10111276 | Account #10111276 |

| ITEM | DESCRIPTION | HEAD COUNT | GROSS WEIGHT | NET WEIGHT | PRICE/CWT | AMOUNT |
|---|---|---|---|---|---|---|
| | Steers Sold from Perrin, TX | 554 head | 367,870 | 355,613 642# Ave | $224.50/cwt | $798,351.19 |
| | | | | | TOTAL | $798,351.19 |

As an affidavit is deemed by USDA as an official record of Country of Origin, I attest through first-hand knowledge, normal business records, or producer affidavit(s) that all livestock referenced by this document or other communications specific to the transaction and transferred are of US origin (born & raised)   *Midwestern Cattle Marketing, LLC*

Make all checks payable to **Midwestern Cattle Marketing, LLC**

## Thank you for your business!

R094

# Exhibit B

R095

The Front Image: Print

2284

RILEY LIVESTOCK, INC.
250 BARTIAN LN
MAYFIELD KY 40076-0517

RABOBANK, N.A.
ARROYO GRANDE, CA 93421-6633
93-242-1222

C0002284

DATE                    AMOUNT

** SEVEN HUNDRED NINETY EIGHT THOUSAND THREE HUNDRED NINETEEN DOLLARS AND 06 CENTS **

PAY
TO THE
ORDER OF

MIDWESTERN CATTLE MARKETING, LLC
P.O. BOX 710
SIDNEY NE 69162

03/31/15      **798,319.06

The Back Image: Print

R096

# Exhibit C

DWAYNE MAYS
Owner/Manager
Res. 308-284-2069

SCOTT VAN WINKLE
Owner/Manager
Res. 308-874-2813

CARLA DE KAY
Office Manager
308-284-2071

SETTLEMENT

*Ogallala*

LIVESTOCK AUCTION
MARKET, INC.
P.O. Box 30
Ogallala, Nebraska 69153
308-284-2071

SELL-NO: 279     027517

DATE   Feb 4, 2016

SOLD FOR   JEFF COX     221 S JEFFERSON AVE     NORTH PLATTE, NE   6910

| Head | Description | | | Buyer | Avg-wt | Weight | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | BLK | COW | SL | 8-3 | | 1265 | 72.50C | 917.13 |
| 1 | BLK | HFRT | FE | 195-51 | | 1515 | 76.00C | 1,151.40 |
| 1 | BLK | COW | SL | 8 | | 1190 | 83.50C | 993.65 |
| 1 | BLK | COW | SL | 8-3 | | 1450 | 75.00C | 1,087.50 |
| 1 | BLK | HFRT | FE | 46-9 | | 1320 | 80.00C | 1,056.00 |
| 1 | BLK | HFRT | FE | 225 | | 810 | 91.00C | 737.10 |
| 1 | BLK | HFRT | FE | 195-51 | | 1760 | 77.00C | 1,355.20 |
| 1 | BLK | HFRT | FE | 46-3 | | 1085 | 75.00C | 813.75 |
| 1 | BLK | HFRT | SL | 195 | | 1065 | 79.00C | 841.35 |
| 2 | BLK | COW | BR | 32-5 | 1320 | 2640 | 1,300.00H | 2,600.00 |

5-6 YR OLD FALL CLVR

| Averages: | Head | Avg-wt | Avg-$-cwt | Avg-$-hd |
|---|---|---|---|---|
| Bred Cow | 2 | 1320 | 98.48 | 1,300.00 |
| Cows | 3 | 1302 | 76.78 | 999.43 |
| Hfrettes | 6 | 1259 | 78.82 | 992.47 |

11           14100      $11,553.08

### DEDUCTIONS

| | | | |
|---|---|---|---|
| COMMISSION | 231.06 | YARDAGE | 39.90 |
| BEEF COUNCIL | 11.00 | HEALTH | 4.18 |
| INSURANCE | 16.17 | BRAND INSP. | 11.00 |
| PREG MO TATT | 14.00 | PREG TEST | 33.75 |
| HAY | 132.00 | | |

TOTAL DEDUCTIONS   $493.06

PLEASE KEEP THIS RECEIPT FOR YOUR RECORDS!!!!!!     NET PROCEEDS   $11,060.02

PLEASE DETACH THIS PORTION BEFORE DEPOSITING CHECK

*Ogallala*

Livestock Auction Market, Inc.
Custodial Account For
Shippers' Proceeds

PAY TO THE ORDER OF

78-1385
1041
ADAMS BANK & TRUST CO.
OGALLALA, NEBRASKA

| DATE | CHECK NO. | AMOUNT |
|---|---|---|
| Feb 4, 2016 | 027517 | $****11,060.02 |

***************Eleven Thousand Sixty and 02/100 Dollars

NORTHWEST CATTLE FEEDERS
& MIDWESTERN CATTLE MKTG
675 ROAD WEST F SOUTH
BRULE, NE 69127

OGALLALA LIVESTOCK AUCTION MARKET, INC.
CUSTODIAL ACCOUNT FOR SHIPPERS' PROCEEDS
VOID AFTER 180 DAYS

SIGNATURE   *Heather Peterson Sec*

NCF000020

⑆027517⑆ ⑈104113958⑈ ⑈0000 066 8⑈

R098

DWAYNE MAYS
Owner/Manager
Res. 308-284-2069

SCOTT VAN WINKLE
Owner/Manager
Res. 308-874-2813

SETTLEMENT

# Ogallala
## LIVESTOCK AUCTION MARKET, INC.
P.O. Box 30
Ogallala, Nebraska 69153
308-284-2071

CARLA DE KAY
Office Manager
308-284-2071

DATE Feb 4, 2016

SELL-NO: 276          027516

SOLD FOR  JEFF COX          221 S JEFFERSON AVE     NORTH PLATTE, NE  6910

| Head | Description | Buyer | Avg-wt | Weight | Price | Amount |
|---|---|---|---|---|---|---|
| 32 | BLK  C&C   BR  3-6 YR OLD RUNNING BACK WITH ANGUS BULL | 205-8 | 779 | 24920 | 2,375.00H | 38,000.00 |
| 6 | BBWF C&C   BR  3-6 YR OLD RUNNING BACK WITH BULL | 130-1 | 588 | 3530 | 1,675.00H | 5,025.00 |
| 6 | BLK  C&C   BR  5- SOLID MOUTH RUNNING BACK WITH BULL | 205-8 | 973 | 5835 | 1,825.00H | 5,475.00 |
| 2 | BLK  C&C   BR  5-6 YR OLD RUNNING WITH BULL CALF HAS CROOKED NECK | 130-9 | 715 | 1430 | 1,100.00H | 1,100.00 |
| 2 | BLK  C&C   BR  SOLID MOUTH RUNNING BACK WITH BULL | 202 | 660 | 1320 | 1,325.00H | 1,325.00 |
| 2 | BLK  C&C   BR  3-4 YR OLD RUNNING WITH BULL CALF IS AS IS | 202 | 613 | 1225 | 1,075.00H | 1,075.00 |

| Averages: | Head | Avg-wt | Avg-$-cwt | Avg-$-hd | | |
|---|---|---|---|---|---|---|
| Cow-cf pr. | 25 | 1530 | 135.91 | 2,080.00 | | |
| 50 | | | | | 38260 | $52,000.00 |

## DEDUCTIONS

| | | | |
|---|---|---|---|
| COMMISSION | 1,000.00 | YARDAGE | 175.00 |
| BEEF COUNCIL | 50.00 | HEALTH | 19.00 |
| INSURANCE | 72.82 | BRAND INSP. | 50.00 |
| MO TATTOO | 125.00 | HAY | 300.00 |

TOTAL DEDUCTIONS  $1,791.82

PLEASE KEEP THIS RECEIPT FOR YOUR RECORDS!!!!!!

NET PROCEEDS  $50,208.18

PLEASE DETACH THIS PORTION BEFORE DEPOSITING CHECK

# Ogallala
Livestock Auction Market, Inc.
Custodial Account For
Shippers' Proceeds

PAY TO THE ORDER OF

78-1595
1041
ADAMS BANK & TRUST CO.
OGALLALA, NEBRASKA

| DATE | CHECK NO. | AMOUNT |
|---|---|---|
| Feb 4, 2016 | 027516 | $****50,208.18 |

*******Fifty Thousand Two Hundred Eight and 18/100 Dollars

NORTHWEST CATTLE FEEDERS
& MIDWESTERN CATTLE MKTG
675 ROAD WEST F SOUTH
BRULE, NE  69127

OGALLALA LIVESTOCK AUCTION MARKET, INC.
CUSTODIAL ACCOUNT FOR SHIPPERS' PROCEEDS
VOID AFTER 180 DAYS

SIGNATURE  *Heather Peterson* Sec

NCF000021

⑈027516⑈ ⑆104113958⑆ ⑈0000 066 8⑈

R099

# Exhibit D

*Ex 6*

**Midwestern Cattle Marketing, LLC**
P.O. Box 710
Sidney, NE 69162
Phone 308.249.0079
Fax 308.254.4731

# INVOICE

INVOICE # DEALER-FEEDER CATTLE
DATE: 3/31/2015

TO:
Northwest Cattle Feeders
675 Rd West F South
Brule, Ne 69127

## *PAYMENT IS DUE WITHIN 24 HOURS OF RECEIPT OF THIS INVOICE*

| OPTION #1: WIRE FUNDS | OPTION #2: FEDEX FUNDS (OVERNIGHT) |
|---|---|
| Points West Community Bank | Points West Community Bank |
| 809 Illinois St | 809 Illinois St |
| PO Box 157 | PO Box 157 |
| Sidney, NE 69162 | Sidney, NE 69162 |
| | |
| Midwestern Cattle Marketing, LLC | Midwestern Cattle Marketing, LLC |
| Custodial Account – Dealer | Custodial Account – Dealer |
| ABA #104101627 | ABA #104101627 |
| Account #10111276 | Account #10111276 |

| ITEM | DESCRIPTION | HEAD COUNT | GROSS WEIGHT | NET WEIGHT | PRICE/CWT | AMOUNT |
|---|---|---|---|---|---|---|
| | Steers Sold from Perrin, TX | 554 head | 362,870 | 355,613 642# Ave. | $224.50/cwt | $798,351.19 |
| | | | | | TOTAL | $798,351.19 |

As an affidavit is deemed by USDA as an official record of Country of Origin, I attest through first-hand knowledge, normal business records, or producer affidavit(s) that all livestock referenced by this document or other communications specific to the transaction and transferred are of US origin (born & raised). *Midwestern Cattle Marketing, LLC*

Make all checks payable to **Midwestern Cattle Marketing, LLC**

## Thank you for your business!

R101

554
Steer

362 870 Gross

355 613 Pay

2.23
─────────────
＄793,016.09

1108.00 Beef
─────────────
＄791,908.09

Lyon Farms / Owen Lyon

CK # 1000 763

Bill Cattle to Jeff Cox

554 stns      362,870
              355,613      642#
              224.50
           ─────────
           ＄798,351.19

profit — 5335.⁰⁰
Jeff Cox — 1778.⁰⁷
Jnson — 3003.⁰³
tom — 554.¹⁰

R102



R103

POINTSWEST
Community Bank

All items are received by this bank subject to the conditions and terms of this bank's collection agreement. Funds from deposits may not be available for immediate withdrawal.

| CURRENCY | | |
|---|---|---|
| COIN | | |

Riley Livestock, Inc

798,3ñ 08

Received by _____ LESS CASH

DATE 4-2-15    TOTAL 798,3ñ 08

NAME: Midwestern Cattle Marketing

ACCT. #: 101112760    BY Ñ

1011127611   009  00079831908

PLEASE LIST ADDITIONAL CHECKS ON THIS ▲ FIGURE ON FRONT

TOTAL OF ADDITIONAL CHECKS

CHECKS    DOLLARS    CENTS

R104

Close window

Print

## Get Rates & Transit Times

| Details | | | | | Help |
|---|---|---|---|---|---|
| | | | | | Amounts are shown in USD |
| Services delivery with date/time | FedEx Priority Overnight®<br><br>12:00 Thu Apr 02, 2015 | FedEx Standard Overnight®<br><br>16:30 Thu Apr 02, 2015 | FedEx 2Day AM®<br><br>12:00 Fri Apr 03, 2015 | FedEx 2Day®<br><br>16:30 Fri Apr 03, 2015 | FedEx Express Saver®<br><br>16:30 Mon Apr 06, 2015 |
| Base Rate | 32.55 | 31.35 | 19.31 | 17.55 | 14.10 |
| Additional charges (+) | | | | | |
| +Fuel surcharge | 0.47 | 0.46 | 0.30 | 0.27 | 0.23 |
| +DAS Comm | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 |
| Discounts (-) | | | | - | |
| -Bonus discount | 3.26 | 3.14 | 1.93 | 1.76 | 1.41 |
| Total | 32.11 | 31.02 | 20.03 | 18.41 | 15.27 |

More information about your results:

- Rates shown here may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide for details.
- For more accurate rate and transit time quotes, view this Courtesy Rate Quote after selecting any additional shipment options.



R105